**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ORIGINAL LULAC COUNCIL NO. 2 INC.,** | § | **CIVIL ACTION NO. 5:23-CV-1307** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **REY FEO SCHOLARSHIP** | § | **JURY TRIAL DEMANDED** |
| **FOUNDATION, INC.,** | § | |
| **and JOHN D. GABRIEL, SR. aka** | § | |
| **JOHNNY GABRIEL** | § | |
| *Defendant.* | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

NOW COMES Plaintiff, Original Lulac Council No. 2 ("Lulac"), and file its Complaint against Defendants Rey Feo Scholarship Foundation ("RFSF") and Defendant John D. Gabriel, Sr. ("Johnny Gabriel"), hereby allege and aver as follows:

<u>**PARTIES**</u>

1.      Plaintiff, Original Lulac Council No. 2 ("Lulac"), is a Texas non-profit corporation company having a principal place of business at 626 Avenue E, San Antonio, Texas 78215.

2.      Defendant Rey Feo Scholarship Foundation ("RFSF") is a Texas non-profit corporation having a principal place of business at 626 Avenue E, San Antonio, Texas 78215, and service of process may be effectuated by electronic mail through its registered agent Johnny D. Gabriel, Sr. at 626 Avenue E, San Antonio, Texas 78215.

3.      Defendant John D. Gabriel, Sr. ("Johnny Gabriel") is an individual residing in San Antonio, Texas at 104 Lou Jon Cir., San Antonio, TX 78213 and service of process may be effectuated upon him at 104 Lou Jon Cir., San Antonio, TX 78213.

<u>**JURISDICTION AND VENUE**</u>

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), 15 U.S.C. § 1121, Chapter 85 of the Judiciary and Judicial Procedure Code, and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a); and this matter raises federal questions arising out of, and under, the Lanham Act, 15 U.S.C. § 1051, *et seq*.

5.     This Court may exercise supplemental jurisdiction over the subject matter of this Civil Action pursuant to 28 U.S.C. § 1367(a) for any other state-law claim asserted herein arising from the same transactions or occurrences and implicating the same questions of fact and related questions of law.

6.     This Court may exercise jurisdiction over Defendants on the grounds that, *inter alia*, Defendants and/or Defendants' agents regularly conduct commerce in the State of Texas, deriving revenue and value therefrom, so as to purposefully avail themselves of the privilege of conducting business within the State of Texas.

7.     This Court has personal jurisdiction over Defendants because Defendants use in commerce of the FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP marks ("Accused Marks" and "Marks") for goods and services in the State of Texas, including in the Western District of Texas.

8.     Defendants' use of the Accused Marks were in commerce regulated by Congress, since this was a prerequisite of registration of the Accused Mark in the United States Patent and Trademark Office under the Lanham Act.

9.      This Court has personal jurisdiction over Defendants because said Defendants purposefully availed themselves of the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer jurisdiction over them.

10.     Furthermore, the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

11.     This Court may exercise jurisdiction over Defendants on the grounds that, *inter alia*, the conduct of Defendants and/or Defendants' agents as alleged herein caused and continue to cause injury to Plaintiff in the State of Texas, and particularly in this District.

12.     Plaintiff Lulac and Defendants are Texas residents and citizens.

13.     Defendant Johnny Gabriel directly and indirectly controls and directs RFSF in all of its activities and use of the Accused Marks.

14.     Defendant Johnny Gabriel knowingly participated in and directed the misappropriation and infringement of Plaintiff Lulac's Marks and is jointly and severally liable for all of the wrongful conduct complained of herein.

15.     Defendants expected their actions to be of consequence in the State of Texas and in this District.

16.     Defendants engaged in activities constituting doing business in the State of Texas and this District.

17.     Defendants own and maintain a website, www.reyfeoscholarship.com, which is accessible in this District, wherein it identifies programs, activities, events, and scholarships.

18.     Plaintiff Lulac and Defendants market and sell their goods and services to the same likely-to-continue classes of customers.

19.     Plaintiff, who is formed in Texas and has its principal place of business in the Western District of Texas, has been injured in this District.

20.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### LULAC COUNCIL NO. 2'S LEGACY

21.     Plaintiff Original Lulac Council No. 2 was established in 1929 as an unincorporated nonprofit association.

22.     Lulac presently was formalized into a Texas nonprofit corporation by the same name, formed on June 14, 2012.

23.     Lulac, whether acting as an unincorporated nonprofit association or as a formally organized entity under Texas law, has operated continuously since 1929 and continuously used the Accused Marks in commerce since at least 1945.

24.     The goodwill of the Marks has always been associated with and remained in Lulac.

25.     Lulac is an independent affiliate charter member council of the League of United Latin American Citizens ("LULAC National"), a Texas non-profit corporation.

26.     Lulac operates as a 501(c)(4) political entity to promote social welfare, as required under its charter with LULAC National.

27.     Lulac aimed to promote social welfare by supporting area youth to attain higher education.

28.     In 1945, Lulac began working toward a scholarship program for deserving area high school graduates.

29.     Confronted with the problem that Lulac members' individual contributions to a scholarship fund was unlikely to fund more than one scholarship, Lulac member and committee

chair John A. Esquivel conceived LA FERIA DE LAS FLORES (translated from Spanish to "the Flower Fair"), so that Lulac could more effectively fund scholarships through the broader San Antonio community.

30.     As part of FERIA DE LAS FLORES, contests were held annually to select a Queen and King representing Lulac to raised funds—respectively named REINA DE LA FERIA DE LAS FLORES (translated from Spanish to "Queen of the Flower Fair") and REY FEO (translated from Spanish to the "Ugly King"). Any reference to "Queen" in this Complaint refers to REINA DE LA FERIA DE LAS FLORES. Any reference to "King" in this Complaint refers to REY FEO.

31.     FERIA DE LAS FLORES went on to become a success and became Lulac's largest fundraising event.

32.     The largest and best-known source of funds comes from fundraising activities conducted by REY FEO candidates in conjunction with San Antonio's city-wide Fiesta® event every year.

33.     The candidate who raises the most funds for scholarships historically is crowned REY FEO for the reigning year and represents Lulac during Fiesta® in San Antonio, Texas, and other events during that year.

34.     Every year, these funds are distributed through renewable awards to approximately 150 high school seniors and college students in the form of a $2,000.00 annual scholarship.

35.     REY FEO is one of only two Kings recognized as official Fiesta® royalty.

36.     Lulac selects a REINA DE LA FERIA DE LAS FLORES to raise funds for Lulac's scholarship program and represent Lulac at Fiesta®.

37.     REY FEO and REINA DE LA FERIA DE LAS FLORES are officially recognized together as Fiesta royalty.

38.     The crowning of REINA DE LA FERIA DE LAS FLORES and REY FEO takes place at Lulac's annual major LA FERIA DE LAS FLORES fundraiser event.

39.     Lulac has held FERIA DE LAS FLORES for over 70 years in San Antonio's 300-year history.

40.     FERIA DE LAS FLORES typically occurs in the fall (October) before Fiesta®, which takes place in the spring (late April) of the following year.

41.     FERIA DE LAS FLORES dates back to the 1940s in Lulac's history as the traditional event for crowning and providing the titles to the REY FEO and REINA DE LA FERIA DE LAS FLORES.

42.     There are two stages to of the REY FEO and REINA DE LA FERIA DE LAS FLORES programs.

43.     The first is the "Campaign" stage where selected REY FEO and REINA DE LA FERIA DE LAS FLORES candidates raise funds for Plaintiff Lulac's scholarship programs, which is typically during the summer before the "Reign Year" begins.

44.     The second stage is the Reign, which begins at the public crowning of REY FEO and REINA DE LA FERIA DE LAS FLORES at Plaintiff Lulac's FERIA DE LAS FLORES event typically held in October and ends in October of the following year (occurring after the Coronation event at the conclusion of Fiesta® in late April).

45.     Plaintiff Lulac's REY FEO and REINA DE LA FERIA DE LAS FLORES and the vital scholarship programs they help support are well-known in San Antonio, Texas.

46.     Lulac's efforts to promote education continued since then, eventually leading to the creation of other programs to fund scholarships.

47.     In 1997, Lulac started a partnership with Alamo Colleges Foundation, Inc. ("Alamo Colleges"), and the San Antonio College Empowerment Center to fund scholarships for nontraditional students and their children.

48.     This scholarship was referred to as the LULAC COUNCIL #2 PARENT/CHILD SCHOLARSHIP and has been referred to as the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP at least as early as 2013.

49.     Lulac is the first adopter and prior, continuous, senior user of the Marks, FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, and REY FEO, as it exclusively first organized the LA FERIA DE LAS FLORES event starting in 1945 and introduced REINA DE LA FERIA DE LAS FLORES and REY FEO at least as early as 1947.

50.     Lulac owns and acquired all rights and title to the Marks, FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, and REY FEO and the goodwill which they represent throughLulac's continuous and exclusive used the Marks since at least 1947.

51.     True and correct excerpts of selected Lulac FERIA DE LAS FLORES programs from 1951, 1959, 1968, 1970, 1979, 1987, 1990, 1996, 2000, 2005, and 2009 are annexed hereto as Exhibit A. *See, e.g.*, Exhibit A, p. 58 (showing, for nonexhaustive example, Lulac's continuous and exclusive use of the Marks since 1947 and showing FERIA DE LAS FLORES royalty through the years, including REY FEO and REINA DE LA FERIA DE LAS FLORES).

52.     Lulac is the first adopter and prior, senior user of the Mark, TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP, as it first used in commerce the mark in 2013, stemming from the 1997 partnership between Lulac and Alamo Colleges, and the San Antonio College Empowerment Center.

53.     Lulac owns and acquired all rights and title to the Mark, TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP, and the goodwill which it represents from the Lulac entities, that together, have continuously and exclusively used the Mark since at least 2013.

54.     All goodwill, and rights of, in, and to the Marks FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP herein that were created by Lulac or its predecessors belong to Lulac and all prior use by licensees, including RFSF, inured to Lulac's benefit as first user and licensor.

### ESTABLISHMENT OF REY FEO SCHOLARSHIP FOUNDATION BY LULAC, PARTNERSHIP, AND LATER BETRAYAL BY RFSF

55.     Plaintiff Lulac established Defendant Rey Feo Scholarship Foundation to provide tax-exempt status for the administration of funds raised through Lulac, such as by its REY FEO and REINA DE LA FERIA DE LAS FLORES candidates and other entities and individuals, for Lulac's educational scholarships to needy area youth.

56.     Lulac formed and incorporated the "San Antonio Lulac Council No. 2 Scholarship Committee, Inc." on June 13, 1975, as a 501(c)(3) corporation, so it could receive larger tax-deductible charitable contributions.

57.     Lulac is the parent organization to subsidiary RFSF.

58.     RFSF was formed under the auspices and charter of Lulac, and has existed since June 13, 1975, under a variety of names.

59.     "San Antonio Lulac Council No. 2 Scholarship Committee, Inc." changed its name to "Lulac Scholarship Committee, Inc." on March 24, 1977. "Lulac Scholarship Committee, Inc." changed its name to "Lulac Rey Feo Scholarship Committee, Inc." on July 31, 1992. "Lulac Rey Feo Scholarship Committee, Inc.," changed its name to "Rey Feo Scholarship Foundation, Inc."

on September 4, 2014, in a filing signed by Chairman of its Board, Johnny Gabriel. Throughout this Counterclaim, use of any of these names refers to the entity known in the present day as "RFSF." Conversely, reference to "RFSF" corresponds with use of any of the above historically used names since 1975.

60.     RFSF required governance by Lulac.

61.     RFSF's 1975 Bylaws and later amended Bylaws required that it be governed by a Board of Trustees consisting solely of Lulac members. All general members of RFSF were required to be Lulac Members. A true and correct copy of the 1975 Bylaws are annexed hereto as Exhibit B. *See* Exhibit B, p. 1, ¶ 2.01.a.

62.     RFSF did not exist before 1975.

63.     RFSF's website, www.reyfeoscholarship.com, falsely states it was established as an organization in 1947, when Lulac first adopted and used the Marks, including REY FEO.



64.     Although it changed its name with the Secretary of State to "Rey Feo Scholarship Foundation," RFSF has never been a foundation within the ordinary or legal meaning of the term.

65.     A foundation's defining features are "a: funds given for the permanent support of an institution: ENDOWMENT; b: an organization or institution established by endowment with

provision for future maintenance trust administered by a foundation." *Foundation*, MERRIAM-WEBSTER (2022 ed.).

66.     RFSF has never been sustained by an endowment or funds given for the permanent support of the organization.

67.     A private foundation is generally funded by an endowment from a sole source, while a public charity must continually solicit donations from individuals and organizations, making RFSF a public charity.

68.     RFSF is not classified by the Internal Revenue Service (IRS) as a private foundation within the meaning of Internal Revenue Code (IRC) § 170(b)(1)(A)(vii).

69.     The IRS has ruled that RFSF is not a "foundation."

70.     RFSF was created as an entity to support Lulac's mission, not as an entity to exercise control of Lulac's programs, activities, events, and scholarships independent of, and to the exclusion of, Lulac.

71.     At no time did Lulac abandon its rights in the Marks, nor did Lulac ever transfer or assign ownership and the goodwill of the Marks to RFSF.

72.     RFSF was not created to exercise control over, own, or act as a holding company for the Accused Marks.

73.     RFSF has never been the owner of the Accused Marks, including REY FEO, or acquired the Accused Marks and the goodwill associated therewith from Lulac at any time.

74.     As part of its charter, RFSF has received funds from Lulac's scholarship program to be used for educational scholarships to qualified students.

75.     In this regard, Lulac either directly participates, sponsors, or allows the Marks, including REY FEO, to be used by individuals and organizations to raise scholarship funds.

76.     Lulac first adopted and used in commerce the FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, and REY FEO Marks in 1945–1947 and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Mark in 2013.

77.     Lulac has continuously used the Marks FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, and REY FEO Marks since 1945–1947 and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Mark since at least as early as 2013.

78.     RFSF was licensed by Lulac to use the Marks in its name and activities in 1975.

79.     Lulac's license of the Marks to RFSF is an at-will license.

80.     In 1992, the Hon. Judge John Specia ruled that Lulac's REY FEO mark had not been transferred or assigned to RFSF when Lulac formed RFSF in 1975.

81.     As a licensee of the Accused Marks, RFSF is estopped to deny the ownership of the Licensor, Lulac.

82.     Defendant Johnny Gabriel is estopped to deny the Lulac's ownership of the Marks.

83.     This at-will license of REY FEO granted by Lulac to RFSF continued to around 2020 and 2021.

84.     By 2021, RFSF began wholly disavowing its parent organization and partner to assert sole ownership of the Accused Marks for itself and to ultimately supplant and usurp the scholarship business and gain control of the hundreds of thousands of dollars of scholarship money raised by Lulac through its programs, activities, events, and candidates.

85.     In 2021, Johnny Gabriel declared his alter ego corporation RFSF as the sole owner of the Accused Marks, FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON PARENT/CHILD SCHOLARSHIP, and applied for registration of same to the exclusion of Plaintiff Lulac.

86.     On September 3, RFSF sent, through its attorneys, letter alleging trademark infringement of the Accused Marks by Lulac and stating that Lulac should immediately cease and desist use of its own Marks.

87.     On February 7, 2022, Lulac sent is own cease-and-desist letter alleging trademark infringement of the Marks.

88.     Plaintiff subsequently filed for cancellation of RFSF's federal registrations and opposed Defendants' application to register TOM MORTON PARENT/CHILD SCHOLARSHIP in the USPTO.

89.     Plaintiff's cancellation proceedings are currently suspended.

90.     The opposition was granted, which constitutes issue preclusion of Defendants' claimed ownership of the TOM MORTON PARENT/CHILD SCHOLARSHIP Mark.

91.     The present dispute represents the third coup attempt to usurp and assert control of Lulac's programs, activities, events, scholarships and scholarship funds, as well as the respective Marks pertaining thereto.

92.     The first takeover coup attempt was by David Villarreal and the LULAC National organization, which was rejected by the Texas courts.

93.     The second takeover coup attempt in 1998 was by a renegade group in RFSF, which was also rejected by the Texas courts.

94.     Johnny Gabriel, as President of Lulac, was instrumental in protecting the Lulac legacy and rights to the Marks in the 1990s.

95.     Ironically, the third and latest 2020 coup attempt was initiated by Defendant Johnny Gabriel, who concentrated power in RFSF; switched sides and stopped representing the interests of Lulac and the purposes for which FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS

FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP programs, activities, events, and scholarships were established; and is now trying to grab total control of the scholarship funds raised for his personal and family's aggrandizement and benefit.

96.     Because of the large sums of money that FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP programs, activities, and events raise each year, RFSF has been plagued by greed and nepotism for decades—with only Lulac defending the interests of students hoping to get scholarships through Lulac's FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP programs, activities, and events.

## HISTORY OF THE DISPUTES SURROUNDING THE MARKS

97.     There have been many attempts to capitalize on the funding received for Plaintiff Lulac's scholarship programs.

98.     From 1990 to 1995, Lulac and RFSF were involved in suits against David Villarreal and LULAC National in the Texas State District Court and United States District Court for the Western District of Texas, San Antonio Division to block LULAC National from asserting control over the REY FEO, FERIA DE LAS FLORES, and REINA DE LA FERIA DE LAS FLORES Marks and scholarship programs.

99.     David Villarreal, along with Ray and Sam Doria, formed splinter factions of Lulac Council No. 2 and Lulac Scholarship Committee, Inc. by the identical names, which caused confusion.

100.    At the time of filing of the lawsuits, the original and authentic, duly-elected officers of Lulac Council No. 2 (Tom Sandoval, Leon Hernandez, Walter Geraghty, Jr., Adolfo Falcon, Leon Hernandez, and Richard Hernandez) were wrongfully expelled.

101.    At the time of filing of the lawsuits, the original and authentic officers and members of the Board of Trustees of Lulac Scholarship Committee, Inc. were Lulac members Tom Sandoval, Leon Hernandez, Rogelio Rangel, Adolfo Falcon, and Richard Hernandez.

102.    In June 1992, Defendant RFSF (then called "Lulac Rey Feo Scholarship Committee, Inc.") filed the following lawsuit styled, *Lulac Scholarship Committee, Inc. v. David Villarreal* (Individually and as Purported President of Lulac Council #2), Cause No. 1992-CI-08355 ("*Lulac Scholarship Comm. v. Villarreal*"), in the 37th Judicial District Court in Bexar County, Texas.

103.    In this 1992 lawsuit, the authentic Lulac Scholarship Committee, Inc. led by Sandoval et al. sought injunctive relief for exclusive use of the REY FEO Mark.

104.    In this 1992 lawsuit, the splinter faction led by David Villarreal argued Lulac Council No. 2 was the first user and owner of the REY FEO Mark and never transferred it to Lulac Scholarship Committee, Inc, who was a mere licensee with no exclusive right to the name.

105.    The Court in *Lulac Scholarship Comm v. Villarreal* denied injunctive relief to RFSF regarding REY FEO and judicially determined the following Findings of Fact and Conclusions of Law ("FOFCOL"), rendering judgment reflecting same. A true and correct copy of these FOFCOL are annexed hereto as Exhibit C.

1.    REY FEO has been elected in San Antonio since 1942.
2.    LULAC SCHOLARSHIP COMMITTEE, INC. was incorporated as a non-profit corporation in 1975.
3.    The by-laws of LULAC SCHOLARSHIP COMMITTEE. INC. were properly amended on February 2, 1990.

4.  The December 4, 1990 meeting by Defendant DAVID VILLARREAL was not conducted pursuant to the by-laws as amended February 2, 1990 and, therefore, the removal of the Board of Trustees and appointment of a new Board of Trustees was invalid.

5.  The name "REY FEO" was not transferred to LULAC SCHOLARSHIP COMMITTEE, INC. in 1975, but was used by both LULAC COUNCIL NO. 2 and LULAC SCHOLARSHIP COMMITTEE, INC.

106.  The Court denied injunctive relief to Lulac Scholarship Committee, Inc. regarding exclusive use of the REY FEO Mark and enjoined Villarreal from representing himself as officer of Lulac Scholarship Committee, Inc. A true and correct copy of the Order in *Lulac Scholarship Comm v. Villarreal* is annexed hereto as Exhibit D.

107.  *Lulac Scholarship Comm v. Villarreal* involved the identical issues and parties as the 1990 case styled, *Rogelio Rangel, et al., v. Manuel Munoz, Jr., et al., vs. LULAC Council No. 2, et al., v. Johnny Gabriel, et al., v. Tom Sandoval, et al.*, Cause No. 1990-CI-18029 ("*Rangel v. Munoz*"), in the 150th Judicial District Court in Bexar County, Texas.

108.  The Hon. Judge John Specia presided over both the 1990 and 1992 cases.

109.  One of the core issues in *Rangel v. Munoz* was which faction was entitled to control the entity presently known as RFSF.

110.  In May 1993, the original and authentic officers of Lulac Council No. 2 were determined in *Rangel v. Munoz* to be Tom Sandoval, Leon Hernandez, Walter Geraghty, Jr., Adolfo Falcon, Leon Hernandez, and Richard Hernandez, who were restored to their membership and positions as officers of Lulac Council No. 2. A true and correct copy of the Judgment in *Rangel v. Munoz* is annexed hereto as Exhibit E.

111.  The rulings of Judge Specia against RFSF and in favor or Lulac constitutes issue preclusion as to ownership of the REY FEO mark.

112.     Another suit, Cause No, 1992-CI-05349 was filed in April 1993 in the 225th Judicial District Court in Bexar County, Texas and removed to the United States District Court for the Western District of Texas, San Antonio Division styled as *Lulac Scholarship Comm., Inc. and Lulac Council 2 v. Lulac National and Jose Velez v. Tom Sandoval and Jose Botello*, Civil Action No. SA-93-CA-0564 ("*Lulac Scholarship Comm., Inc. and Lulac Council 2 v. Lulac National*").

113.     On June 21, 1995, Lulac and RFSF (then called "Lulac Rey Feo Scholarship Committee, Inc.") entered into a Compromise Settlement Agreement, whereby RFSF agreed to submit a yearly financial report prepared by a certified accountant to Lulac, who continued to license use of the disputed trademarks to RFSF in exchange.

114.     Pursuant to a Compromise Settlement Agreement, the first such financial report was to be due on or before October 1995. The reports have never been delivered by Defendants as required.

115.     In 1998, Lulac filed suit against RFSF (then called "Lulac Rey Feo Scholarship Committee, Inc."), in the 131st Judicial District Court in Bexar County, Texas in the case styled, *The Original LULAC Council No. 2, Inc. and Jose Botello v. Lulac Rey Feo Scholarship Committee, Inc.*, Cause No. 1998-CI-017505 ("*Lulac Council 2 v. Lulac Rey Feo Scholarship Comm.*"). A true and correct copy of the Original Petition and Application for Temporary Restraining Order is annexed hereto as Exhibit F.

116.     This suit was based on a rogue Board of Directors of Lulac Rey Feo Scholarship Committee, Inc. led by Leon Hernandez, attempting to assume control of Lulac's programs, activities, events, and scholarships, as well as its Marks.

117.     At the time of the 1998 lawsuit, Defendant Johnny Gabriel was President of Plaintiff Lulac.

118.    In 1997, Johnny Gabriel sent a letter to the Board of Directors of Lulac Rey Feo Scholarship Committee, Inc., demanding "the Rey Feo trade mark name be returned to its original owner, Original Lulac Council No. 2" and that "the council never gave the name to anyone." A true and correct copy of this letter is annexed hereto as Exhibit G.

119.    In the 1998 lawsuit, Johnny Gabriel, as President of Lulac, verified "that the statements contained in the foregoing Original Petition and Application for Temporary Restraining Order are within his personal knowledge and are true and correct." *See* Exhibit F, p. 9.

120.    In the Petition for the 1998 lawsuit, he asserted that RFSF was established by Lulac to administer the scholarship fund; that Lulac allows the mark REY FEO to be used for scholarship fundraising; and that the crowning of REY FEO takes place at Lulac's LA FERIA DE LAS FLORES event, which has been held since the 1940s. *See id.* at pp. 2–4.

121.    The Defendants in the 1998 lawsuit, Leon Hernandez, Domingo Garcia, and Richard Hernandez, along with two other board members, Rogelio Rangel and Fred Aguirre, were ordered by the Court to appoint Lulac officers and members Johnny Gabriel, Tom Sandoval, Jose Botello, and Bill Barowski to the Board of Lulac Rey Feo Scholarship Committee, Inc. Immediately thereafter, Hernandez, Garcia, Rangel, and Aguirre were to resign from its Board of Directors/Trustees. A true and correct copy of the Final Judgment is annexed hereto as Exhibit H. *See* Exhibit H, p. 2.

122.    The Final Judgment in *Lulac Council 2 v. Lulac Rey Feo Scholarship Comm.* ordered that the incoming Board of Directors/Trustees of the Lulac Rey Feo Scholarship Committee, Inc.  were to amend their bylaws to eliminate the positions of lifetime trustees. *See id.* at. p. 6.

123.    Thereafter, Defendant Johnny Gabriel became Chairman of the Board of Defendant RFSF.

124.    Defendant Johnny Gabriel has controlled the composition of the Board of Directors of RFSF.

125.    Lulac continued operating the FERIA DE LAS FLORES and crowning of REY FEO and REINA DE LA FERIA DE LAS FLORES until 2020 when the global COVID-19 pandemic caused the city-wide Fiesta® events and Lulac's scholarship programs to be postponed.

126.    The annual Fiesta® events resumed in 2022 after pandemic-related concerns and restrictions on social gatherings eased.

127.    Millions of dollars have been raised to date for Plaintiff Lulac's scholarships through its events such as FERIA DE LAS FLORES and through REINA and REY FEO candidates.

128.    Lulac also continued its scholarship program TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP until present.

129.    Given that his once-lucrative Gabriel's Liquors business fell into bankruptcy in 2016, Defendant Johnny Gabriel began seeking a new legacy and money-making opportunity for his family.

130.    Defendants RFSF and Johnny Gabriel are trying to take over the business established by Plaintiff Lulac and the millions of dollars raised for Lulac's scholarships for the personal benefit of those in control of RFSF without any true oversight, restrictions, or scrutiny.

### RFSF'S FRAUDULENT TRADEMARK APPLICATIONS AND REGISTRATIONS

131.    In 2020, the pandemic provided Defendants RFSF and Johnny Gabriel opportunity to misappropriate the Accused Marks from Plaintiff Lulac to RFSF.

132.    In 2020 and 2022, Defendants filed new trademark applications in the USPTO on sole behalf of RFSF seeking registration of the Accused Marks (representing Plaintiff Lulac's programs, activities, events, and scholarships) without the knowledge or consent of, and to the exclusion of, Lulac.

133.    Defendants also filed applications in the USPTO on sole behalf of RFSF seeking registration of the Accused Marks prior to 2020 without the knowledge or consent of, and to the exclusion of, Plaintiff Lulac.

134.    Federal trademark registrations are not deterministic of ownership of trademark rights in this country and state, which is instead determined by priority of use.

135.    In May 2022, Lulac filed cancellation proceedings in the USPTO TTAB when it learned of RFSF's fraudulent trademark registrations and applications, which have been suspended due to the instant litigation.

136.    In retaliation, RFSF filed its Original Petition (*see* DE. 1-3) for a temporary injunction in late September 2022 in the 57th Judicial District Court in Bexar County, Texas and filed its Amended Petition (*see* DE. 1-6) in October 2022 in the case styled, *Rey Feo Scholarship Foundation. v. Lulac Council #2*, Cause No. 2022CI18447, which was timely and removed to this Court.

137.    In the Original Petition, Plaintiff RFSF alleged "trademark misappropriation, unjust enrichment, unfair competition, civil conspiracy, and aiding and abetting [Defendant Lulac's] illegal use of RFSF's federally registered trademarks and service marks."

138.    In the Original Petition, Plaintiff RFSF alleged, "Plaintiff learned that Defendant [Lulac] was misappropriating or otherwise misusing its marks and the concept of the Queen of the FERIA DE LAS FLORES without permission and to the injury of Plaintiff."

139.    In the Original Petition, Plaintiff RFSF alleged:

"Defendant [Lulac's] misuse has included, but is not limited to:

(A) Fundraising or taking and holding funds attributable to the FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, and/or the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP;

(B) Misrepresenting to the public that it is the holder of the rights to the marks;

© Designating a Queen, not authorized as the 2022 FERIA DE LAS FLORES Queen, to participate in 2022 Fiesta events; and

(D) Misrepresenting to the Fiesta Flambeau and Battle of the Flowers Parade organization that Defendant's Queen should participate in the 2022 parades representing the FERIA DE LAS FLORES, instead of the rightful Queen selected by Plaintiff."

140.    In the Original Petition, Plaintiff RFSF alleged, *inter alia*:

a.  "Plaintiff is the lawful owner of the service marks of FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP."
b.  "Defendant [Lulac] misappropriated Plaintiff's service marks to unlawfully raise funds [and] declare its candidate as Queen of the 2022 FERIA DE LAS FLORES, and misrepresented its Queen's status to the Fiesta Commission San Antonio and the general public."
c.  Defendant Lulac "affirmatively represented to the Battle of Flowers and Flambeau associations that it was the representative of the FERIA Queen."

141.    In the Original Petition, Plaintiff RFSF falsely alleged that it is the sole owner of the Marks.

142.    In the Original Petition, Plaintiff RFSF alleged that the prior user of the Marks, Lulac, is an infringer of the Marks.

143.    Defendant RFSF was not the owner of the Accused Marks at the time trademark applications for the Accused Marks were filed on sole behalf of RFSF at the direction of Defendant Johnny Gabriel.

144.    Plaintiff Lulac was the owner of the Marks.

145.    Plaintiff Lulac did not transfer or assign the Marks to Defendants.

146.    Defendants had knowledge that Plaintiff Lulac was owner of the Marks and that the Marks had not been assigned or transferred.

147.    Defendant RFSF and its current Chairman, Defendant Johnny Gabriel, were parties to the prior court proceedings, which found that Plaintiff Lulac was the owner of the Marks (which had not been transferred to RFSF), and that RFSF was not the sole owner of the Marks.

148.    These judicial findings were made when Johnny Gabriel was President of Lulac.

149.    Defendants were not authorized to file trademark applications for the Accused Marks on sole behalf of RFSF.

150.    Defendants did not file trademark applications for the Accused Marks to provide any cognizable benefit to Plaintiff Lulac.

151.    Defendants filed trademark applications for the Accused Marks to the detriment of Plaintiff Lulac.

152.    Defendants filed trademark registrations for the Accused Marks to exclude Plaintiff Lulac from its own programs, activities, events, candidates, and programs.

153.    Defendants' trademark applications for the Accused Marks were filed at the direction of Defendant Johnny Gabriel in order to misappropriate and fully control Plaintiff Lulac's programs, activities, events, and scholarships.

154.    Defendants' trademark applications for the Accused Marks were filed at the direction of Defendant Johnny Gabriel in order to falsely represent RFSF as sole owner of the Accused Marks to the public, such that Defendants could seize control of programs, activities, events, and scholarships from its parent Plaintiff Lulac.

155.     Defendants' trademark applications for the Accused Marks were filed at the direction of Defendant Johnny Gabriel in order to deceive outside parties that RFSF was the sole owner of the Accused Marks.

156.     Defendants' trademark applications for the Accused Marks were filed at the direction of Defendant Johnny Gabriel in order to deceive outside parties that they were the original and true source of Plaintiff Lulac's programs, activities, events, and scholarships and interfere with Lulac's business relationships.

157.     Defendants' trademark applications for the Accused Marks were filed at the direction of Defendant Johnny Gabriel in order to disparage Plaintiff Lulac to outside parties that Lulac was not the owner of the Accused Marks and was, instead, an infringer.

### INTERFERENCE WITH BUSINESS RELATIONS AND CONTRACTS AND OTHER WRONGFUL CONDUCT BY RFSF

158.     Defendants falsely claim that FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP programs, activities, and events, and scholarships are exclusively run and controlled by RFSF and that it is the owner of the Accused Marks.

159.     Defendants have contacted numerous outside parties, including the Fiesta San Antonio Commission, Inc. ("Fiesta Commission"), which is the governing body for Fiesta; Consejo Real de Reyes Feos Anteriores, Inc. d/b/a Rey Feo Consejo Educational Foundation ("Consejo"); the Queen candidates, Queens, and Queen's parents'; current and former Kings; Battle of Flowers Association; Fiesta Flambeau Parade Association; and various vendors and others that work with Plaintiff Lulac, as it relates to Lulac's FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL

PARENT/CHILD SCHOLARSHIP Marks, programs, activities, events, and scholarships, and noticed, threatened, or misrepresented its ownership of the Accused Marks.

160.    Defendants have received hundreds of thousands of dollars from Consejo on the pretense that RFSF owns the Accused Marks, whereby Plaintiff Lulac is entitled to recovery of these windfall profits.

161.    Defendants acted to prevent the Fiesta Commission from distributing funds to Plaintiff Lulac's FERIA DE LAS FLORES on the pretense that RFSF owns the Accused Marks.

162.    Defendants use RFSF's trademark applications and registrations to deceive outside parties that RFSF is the owner of the Accused Marks.

163.    Defendants use RFSF's trademark applications and registrations to deceive outside parties that Defendants are the only proper entities with which to engage in contractual and business relationships with respect to the programs, activities, events, and scholarships referenced by the Accused Marks.

164.    Defendants use RFSF's trademark applications and registrations to disparage Plaintiff Lulac.

165.    Defendants' actions are causing confusion, irritation, and anxiety amongst those involved with Fiesta®.

166.    Defendants' actions have usurped the business opportunities of Plaintiff Lulac.

167.    Defendants' actions have unlawfully interfered with Lulac's ability to raise funds for scholarships and Fiesta®-related expenses.

168.    Defendants have demanded that Plaintiff Lulac and its members cease any and all communication with third parties, such as the Fiesta Commission, Consejo, and the REY FEO and

REINA candidates and selections, Battle of Flowers Association, Fiesta Flambeau Parade Association, and vendors as it relates to any upcoming events and the Accused Marks.

169.    Defendants tortiously interfered with the valid contracts and business relationships that Plaintiff Lulac had relating to the Fiesta Commission, candidates and selected Queens, events such as FERIA DE LAS FLORES, and scholarship programs such as the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP).

170.    Plaintiff Lulac is a participating member organization (PMO) in Fiesta®.

171.    As a PMO, Plaintiff receives funds annually from the Fiesta Commission.

172.    Defendants falsely represented RFSF's sole ownership of the Accused Marks to the Fiesta Commission.

173.    Defendants disparaged Plaintiff Lulac to the Fiesta Commission.

174.    Defendants have represented to the Fiesta Commission that Plaintiff Lulac is not the rightful owner of the Accused Marks and is an infringer.

175.    Defendants prevented the disbursement of funds from the Fiesta Commission to Plaintiff Lulac.

176.    Plaintiff Lulac exclusively contracted with and selected a Queen annually until 2020.

177.    Gabrielle Uribe signed a contract with Plaintiff Lulac to serve as a candidate for its REINA DE LA FERIA DE LAS FLORES.

178.    This contract, similar to Plaintiff Lulac's past contracts with the Queen candidates, specified that the selection of a REINA DE LA FERIA DE LAS FLORES is contingent upon the candidate raising a minimum of $50,000.00 during the Campaign phase, which is due by October of each year.

179.    The funds raised by the Queen candidate during the Campaign are used for Plaintiff Lulac's scholarship programs, namely the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP with Alamo Colleges.

180.    As part of the contract, the Queen candidate is required to deposit the funds raised in an account set up by Plaintiff Lulac and checks for the Campaign must be made payable to LULAC Council No. 2 Scholarship Fund.

181.    Gabrielle Uribe was selected to serve as Plaintiff Lulac's REINA DE LA FERIA DE LAS FLORES for the 2019-2020 Reign year and signed a contract with Lulac to this effect in November 2019; however, the pandemic caused interruptions to Lulac and Fiesta® events in early 2020.

182.    Following the pandemic in 2020, Defendants RFSF and Johnny Gabriel attempted to take over activities regarding the Queen (i.e., contract, selection, crowning) to misappropriate the business of Plaintiff Lulac for itself.

183.    As a result, Gabrielle Uribe served as Plaintiff Lulac's REINA DE LA FERIA DE LAS FLORES for the 2021-2022 Reign year.

184.    Renee Vasquez signed a contract with Plaintiff Lulac to serve as a candidate for its REINA DE LA FERIA DE LAS FLORES.

185.    Renee Vasquez was selected to serve as Plaintiff Lulac's REINA DE LA FERIA DE LAS FLORES for the Reign year following Gabrielle Uribe and signed a contract with Lulac to this effect in January 2020; however, the pandemic caused interruptions to Lulac and Fiesta® events in early 2020.

186.    As a result, Renee Vasquez served as Plaintiff Lulac's REINA DE LA FERIA DE LAS FLORES for the 2022-2023 Reign year.

187.     In 2022, Defendants RFSF and Johnny Gabriel, with knowledge of Plaintiff's contract, drafted its own contract for Renee Vasquez to serve as the REINA DE LA FERIA DE LAS FLORES for the 2022-2023 Reign year.

188.     Defendants entered into a competing contract with Renee Vasquez.

189.     Defendants RFSF and Johnny Gabriel tortiously interfered with Plaintiff Lulac's contract with Renee Vasquez.

190.     Defendants usurped the Queen to the exclusion of Plaintiff Lulac.

191.     In October 2022, Defendants RFSF and Johnny Gabriel attempted to block Plaintiff Lulac from presenting Renee Vasquez as its 2022-2023 REINA DE LA FERIA DE LAS FLORES at the public crowning during Lulac's FERIA DE LAS FLORES event (which was combined with Consejo's Noche De Los Reyes event).

192.     Defendants RFSF and Johnny Gabriel prevented Plaintiff from hosting FERIA DE LAS FLORES as a separate fundraising event in October 2022 by combining it with the Noche de los Reyes event without Lulac's knowledge or consent.

193.     By combining the events, RFSF was able to misappropriate the funds raised at the event in October 2022, whereby FERIA DE LAS FLORES has historically served as Lulac's primary fundraiser for its expenses, including Fiesta® and the Queen's Reign.

194.     Such funds have been raised at FERIA DE LAS FLORES exclusively by Lulac since 1945.

195.     Defendants' intent to usurp Plaintiff Lulac's FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP programs, activities, events, scholarship, and title is made apparent by its

allegations in its Original Petition (DE. 1-3) that Lulac was not authorized to designate a Queen, even though it has been doing so since the 1940s.

196.    Defendants' intent to usurp Plaintiff Lulac's FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP programs, activities, events, scholarship, and title is made apparent by its allegations in its Original Petition (DE. 1-3) that Lulac was misappropriating and/or misusing the Marks and misrepresenting to the public that it was the holder of the rights to same.

197.    Defendants have misrepresented to Queen candidates, Queens, and parents of Queens and Consejo that RFSF is the sole owner of the Accused Marks.

198.    Defendants have misrepresented to Queen candidates, Queens, and parents of Queens that RFSF is the entity with which to engage with respect to the contract, programs, activities, events, and scholarships.

199.    Defendants have interfered with Plaintiff Lulac's contractual and business relationships with Queen candidates, Queens, and parents of Queens to exclude Lulac.

200.    Defendants have disparaged Plaintiff Lulac to Queen candidates, Queens, and parents of Queens.

201.    Defendants have represented to Queen candidates, Queens, and parents of Queens that Plaintiff Lulac is not the rightful owner of the Accused Marks and is an infringer.

202.    As a result, Plaintiff Lulac was precluded by Defendants from receiving $50,000.00 in scholarship funds raised by the REINA DE LA FERIA DE LAS FLORES candidate Renee Vasquez during her 2022 Campaign for Lulac's TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP with Alamo Colleges.

203.    These funds collected by Plaintiff Lulac in October of each year are used to fund the LULAC COUNCIL #2 PARENT/CHILD SCHOLARSHIP (also known as the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP) with Alamo Colleges).

204.    These funds received by Plaintiff Lulac from the Queen candidate in October are typically gifted to Alamo Colleges in the following February.

205.    These funds raised during the 2022 Campaign by the REINA DE LA FERIA DE LAS FLORES candidate Renee Vasquez should have been provided to Plaintiff Lulac in October 2022.

206.    But for the actions of Defendants, Plaintiff Lulac would have received the funds raised during the 2022 Campaign by its REINA DE LA FERIA DE LAS FLORES candidate Renee Vasquez.

207.    Plaintiff Lulac has entered into numerous contracts regarding Lulac's scholarship program LULAC COUNCIL #2 PARENT/CHILD SCHOLARSHIP (also known as the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP) with Alamo Colleges since it was established in 1997.

208.    In October 2022, Plaintiff Lulac entered into an Annual Scholarship Gift Agreement with Alamo Colleges.

209.    Due to the actions of Defendants, Plaintiff Lulac was unable to timely provide Alamo Colleges with appropriate scholarship funds in February 2023.

210.    Defendants jeopardized not only Lulac's contractual relationship with Alamo Colleges, but also the provision of scholarships to non-traditional students seeking an education and their children.

211.     RFSF has adopted a competing queen, REINA LINDA, to compete with Lulac's REINA DE LA FERIA DE LAS FLORES.

212.     Defendants created REINA LINDA to confuse the public that it is associated with Plaintiff's REINA DE LA FERIA DE LAS FLORES.

213.     REINA LINDA is not officially recognized by the Fiesta Commission as official Fiesta® royalty.

214.     Defendants conferred its made-up REINA LINDA title to Natalie Gamez, president and owner of the Gamez Group, in 2023.

215.     RFSF profited from the REINA LINDA position.

216.     Natalie Gamez used her REINA LINDA position to advertise Gamez Law Firm, the well-known San Antonio personal injury law firm owned by her father and trial attorney Joe Gamez, by taking the podium from the 2023 REINA DE LA FERIA DE LAS FLORES Renee Vasquez and shouting the law firm's slogan of "Gamez Law Fights" at the REY FEO LXXIV Candlelight Ball held March 3, 2023, a non-profit event.

## SELF-DEALING

217.     As a non-profit 501(c)(3) corporation, RFSF's net earnings cannot inure to the benefit of any Director or Officer of the corporation or any private individual or relatives of the directors and officers of RFSF.

218.     Additionally, RFSF cannot engage in any act of self-dealing and nepotism and must maintain accurate books and records with respect to all financial transactions, including all income and expenditures, in accordance with generally accepted accounting practices.

219.     The financial and business records of RFSF are not confidential and should be open to public access.

220.    Defendant Johnny Gabriel has a long history of illegal self-dealing and misuse of the donations made for scholarships.

221.    In 2015, one of the donations to Rey Feo candidate Darren Casey came in the form of land on the East side of San Antonio, Texas.

222.    The land sat untouched for the next few years, until 2019 when real estate agent Regan Gabriel, grandson of current RFSF Chairman Johnny Gabriel, was hired to sell the property. Instead of putting it on the market, Regan Gabriel decided he wanted to purchase the land himself.

223.    The RFSF Board – wherein Defendant Johnny Gabriel is Chairman and three of five RFSF Board members at the time were also members of the Gabriel family – approved the decision to sell the land to Regan Gabriel.

224.    This land transaction coincided with grocery chain giant H-E-B's purchase of 871 acres of land nearby in September 2017.

225.    The value of the land "sold" to Regan Gabriel was worth far more than the price he paid for it.

226.    Because the illegal transaction made the news, Defendant had to take back the land from Regan Gabriel.

227.    RFSF has also previously been involved in public scandal because its Board was comprised of over 51% of Gabriel family members at various times.

228.    The IRS requires 501(c)(3) public charities to have at least 51% of the voting members of the board of directors be unrelated.

229.    RFSF is controlled by Chairman Johnny Gabriel and his children, which is illegal.

230.    In awarding educational scholarships, RFSF participates in the LULAC National Scholarship Fund ("National Scholarship Fund").

231.    This LULAC National Scholarship Fund acts as a matching grant program which supplements the funds raised by RFSF for scholarships.

232.    The LULAC National Scholarship Fund Participation Guidelines and Procedures set forth the operating principles for the partnership between it and the local LULAC Councils.

233.    In this case, the National Scholarship Fund deals with RFSF for the specific purpose of administering the scholarship funds.

234.    Accordingly, the LULAC National Scholarship Fund works with Lulac and RFSF to award these educational scholarships.

235.    One of the criteria to receive the funds from National Scholarship Fund is that "[n]o student will be eligible for a scholarship if he/she is a member of the immediate family of a scholarship committee member, the Council President, or an individual contributor to the local funds of the Council."

236.    Despite this prohibition, RFSF, through its Trustee Members, has voted to award scholarships to unauthorized relatives.

237.    This action not only violated the National Scholarship Fund's policies and procedures, but it also constituted an act of self-dealing and violated state and federal laws governing non-profits since RFSF funds were used to benefit the family members of RFSF Trustees.

238.    RFSF's refusal to provide an audited financial report to Lulac and its members breached the Compromise Settlement Agreement terms, as well as its own Bylaws.

239.    Furthermore, the awarding of scholarships to children of its lifetime Trustees all constitute acts of malfeasance and breach of fiduciary duty owed to the general members.

240.    The rules for the REY FEO campaign and reign stated REY FEO received a maximum amount to spent on his activities as REY FEO and any additional expenditures came out of the REY FEO's own pocket.

241.    Beginning in 2017, Johnny Gabriel approved REY FEO receiving about $340,000.00 to $400,000.00 for his Candlelight Ball Expenses, hotel rooms, photography, sashes for court, police escorts, gifts, personal drivers, dry cleaning, vehicle repairs, dinners, parties, uniforms for Court, medals, and the like.

242.    The rules for REY FEO reign are that REY FEO only receives the following to cover his expenses:

> Ten percent (10%) of the amount collected by the winning candidate at the Feria de las Flores annual gala is returned to him by the RFS, Inc. These funds are for the establishment of his Rey Feo Educational Activities Fund used to help defray the year's expenses.

243.    The amount that REY FEO was entitled to receive each year as reimbursement for expenses was typically less than $25,000.00.

244.    From 2017 to 2019, REY FEO spent more of scholarship donations for his reign than was given in scholarships to students.

245.    REY FEO in 2019 was Johnny Gabriel's son-in-law, Dr. Sal A. Barbaro, III.

246.    As a nonprofit charity, Defendant should not spend more on parties and Fiesta events than on scholarships for students.

247.    These payments of scholarship donations to REY FEO were illegal and Defendants should be ordered to pay back these funds to Lulac, so they can be distributed for scholarships.

248.    It is likely that such actions by Defendants will result in the loss of sponsors and donations.

**ACCUSED MARKS**

249.    Lulac is the owner of pending U.S. trademark application Serial No. 97/297,800, filed March 6, 2022 for FERIA DE LAS FLORES for "Organizing community festivals featuring primarily an annual cultural celebration advocating educational programs within the community urging students to stay in school, go to college and pursue their dreams through higher education and also providing a cultural celebration that selects a Queen to participate in parades, social events, and school visitations as an ambassador for education" in Int'l Class 41.

250.    Lulac is the owner of pending U.S. trademark application Serial No. 97/297,799, filed March 6, 2022, for LA REINA DE LA FERIA DE LAS FLORES for "Organizing community festivals featuring primarily an annual cultural celebration advocating educational programs within the community urging students to stay in school, go to college and pursue their dreams through higher education and also providing a cultural celebration that selects a Queen to participate in parades, social events, and school visitations as an ambassador for education" in Int'l Class 41.

251.    Lulac is the owner of pending U.S. trademark application Serial No. 97/707,308, filed December 7, 2022, for REY FEO for "Charitable fundraising services by means of raising funds for college" in Int'l Class 36.

252.    Lulac is the owner of TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP for "Financial administration of scholarship programs; Providing educational scholarships" since at least as early as 2013 in San Antonio, Texas and is the prior user of the mark.

253.    RFSF is the current listed owner of Registration No. 6,431,439 for the mark FERIA DE LAS FLORES, registered July 27, 2021 (based on application Serial No. 90/020,501, filed June 25, 2020), for "Charitable fund raising; Charitable fundraising services by means of raising funds for college education costs" in Int'l Class 36 and alleges a date of first use in commerce by

Defendant of June 25, 2020. Plaintiff has concurrently filed for Cancellation in a separate TTAB proceeding, which is suspended due to the instant litigation. Plaintiff maintains RFSF's Registration for FERIA DE LAS FLORES was fraudulently obtained and RFSF was not the owner of the mark at the time it was filed.

254.    RFSF is the current listed owner of Registration No. 5,495,292 for the mark REINA DE LA FERIA DE LAS FLORES registered June 19, 2018 (based on Serial No. 87/434,866, filed May 3, 2017), for "Charitable fund raising; Providing educational scholarships" in Int'l Class 36 and alleges a date of first use by RFSF in commerce of April 17, 1982.

255.    Lulac has concurrently filed for Cancellation in the same TTAB proceeding as FERIA DE LAS FLORES, which is suspended due to the instant litigation. Lulac maintains RFSF's Registration for REINA DE LA FERIA DE LAS FLORES was fraudulently obtained and RFSF was not the owner of the mark at the time it was filed.

256.    RFSF is the current listed owner of Registration No. 2,935,872 for the mark REY FEO registered March 29, 2005 (based on Serial No. 76/572,047, filed January 26, 2004), for "Charitable scholarship fundraising services" in Int'l Class 36 and alleges a date of first use by RFSF in commerce of 1947. Lulac maintains RFSF's Registration for REY FEO was fraudulently obtained and RFSF was not the owner of the mark at the time it was filed.

257.    On March 1, 2022, RFSF filed pending U.S. trademark application Serial No. 97/289,132 for TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP for "Financial administration of scholarship programs; Providing educational scholarships" in Int'l Class 36 and alleges a date of first use in commerce by RFSF of December 31, 2018. This application was published for opposition on January 17, 2023, and Lulac has concurrently filed a Notice of Opposition in a separate TTAB proceeding. Lulac maintains RFSF's Registration for TOM

MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP was fraudulently obtained and RFSF was not the owner of the mark at the time it was filed.

258.   Lulac first adopted and has continuously used FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, and REY FEO for the above-stated goods and/or services since at least as early as 1945, 1946, and 1947 respectively, in San Antonio, Texas and is the prior user of the marks.

259.   Lulac first adopted and has continuously used TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP for the above-stated goods and/or services since at least as early as 2013 in San Antonio, Texas and is the prior user of the marks.

260.   The statements Defendant RFSF made in the trademark applications for the Accused Marks filed in the USPTO regarding its alleged use, date of use, ownership, and consent to register were false.

261.   The specimens submitted to the USPTO by Defendant RFSF to show its use of the Accused Marks were produced and disseminated by Plaintiff Lulac and showed Lulac's use of the mark.

262.   At the time Defendants filed trademark applications for FERIA DE LAS FLORES on June 25, 2020, REINA DE LA FERIA DE LAS FLORES on May 3, 2017, REY FEO on January 26, 2004, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP on March 1, 2022, RFSF's use of the Accused Marks was as a licensee for Plaintiff Lulac and inured to Lulac's benefit.

### FERIA DE LAS FLORES and REINA DE LA FERIA DE LAS FLORES Marks

263.   At the time Defendants filed trademark applications for FERIA DE LAS FLORES and REINA DE LA FERIA DE LAS FLORES in 2020 and 2017 respectively, they knew Plaintiff

Lulac was the prior user of the FERIA DE LAS FLORES and REINA DE LA FERIA DE LAS FLORES marks, using them exclusively and continuously since 1945 and 1946 and crowning every Queen for decades.

264.     At the time Defendants filed trademark applications for FERIA DE LAS FLORES and REINA DE LAS FERIA DE LAS FLORES in 2020 and 2017 respectively, they knew that RFSF was not the sole owner of the FERIA DE LAS FLORES and REINA DE LAS FERIA DE LAS FLORES marks and that Plaintiff Lulac was the owner of same.

265.     Plaintiff Lulac was the first user of FERIA DE LAS FLORES and REINA DE LA FERIA DE LAS FLORES in 1945 and 1946, almost 30 years before Defendant RFSF came into existence by being established by Lulac.

266.     Specimens submitted in connection with Defendants' FERIA DE LAS FLORES and REINA DE LAS FERIA DE LAS FLORES applications and registrations showed use of the same marks by Plaintiff Lulac.

267.     The trademarks or service marks FERIA DE LAS FLORES and REINA DE LA DERIA DE LAS FLORES were never transferred to Defendant RFSF by Lulac when RFSF was formed in 1975 (operating as Lulac Scholarship Committee, Inc. at the time), when the trademark applications for same were filed by RFSF in 2020 and 2017, nor were they transferred to RFSF any time thereafter.

### REY FEO Mark

268.   At the time Defendants filed a trademark application for REY FEO in 2004, they knew that Plaintiff Lulac was the prior user of the REY FEO mark, using it exclusively and continuously since 1947.

269.   At the time Defendants filed a trademark application for REY FEO in 2004, they knew that RFSF was not the sole owner of the REY FEO mark, and that Plaintiff Lulac was the owner of same.

270.   Plaintiff Lulac was the first user of REY FEO in 1947, almost 30 years before Defendant RFSF came into existence by being established by Lulac.

271.   Defendants filed a trademark application for REY FEO for charitable scholarship fund raising services on August 10, 1992, incredibly claiming a date of first use of 1964, which was registered on June 29, 1993.

272.   Defendant Johnny Gabriel (currently President of RFSF), acting as President of Plaintiff Lulac at the time with advice of legal counsel, caused Lulac to file a trademark application for REY FEO for "Charitable scholarship fund raising services" on February 16, 1998, claiming a date of first use of 1947.

273.   Defendant Johnny Gabriel, as President, was a fiduciary owing to Plaintiff Lulac certain duties, including a duty of loyalty to act in Lulac's best interests.

274.   Plaintiff Lulac's application for REY FEO filed was later abandoned at the direction of Defendant Johnny Gabriel on January 9, 1999.

275.   Notwithstanding the position taken in sworn statements and court judgments, Defendant Johnny Gabriel, on behalf of Defendant RFSF, obtained a new attorney – unfamiliar with the prior Court determinations of Plaintiff Lulac's ownership of the REY FEO mark – to file a trademark application, Serial No. 76/572,047, for REY FEO for "Charitable scholarship fundraising services" on January 26, 2004 incredibly claiming a date of first use of 1947, which registered on March 29, 2005 as Registration No. 2,935,872. Plaintiff maintains RFSF's Registration for REY FEO was fraudulently obtained.

276.   Specimens submitted in connection with Defendant RFSF's REY FEO applications and registrations showed use of the same mark by Plaintiff Lulac.

277.   The trademark or service mark REY FEO was never transferred to Defendant RFSF by Plaintiff Lulac when RFSF was formed in 1975 (operating as Lulac Scholarship Committee, Inc. at the time), when the trademark application for same was filed by RFSF in 2004, nor was it transferred to RFSF any time thereafter.

278.   Defendants also own Registration No. 6,105,793 for the mark REY FEO KING & QUEENS DIES Y SEIS DE SEPTIEMBRE RIVER PARADE registered July 21, 2020 (based on Serial No. 88/647,930, filed October 9, 2019), for "Entertainment services in the nature of a live parade" in Int'l Class 41 and alleges a date of first use by RFSF in commerce of October 9, 2019.

279.   At the time Defendants filed the application for REY FEO KING & QUEENS DIES Y SEIS DE SEPTIEMBRE RIVER PARADE, they knew that Plaintiff Lulac was owner of the confusingly similar Accused Mark, REY FEO.

280.   Plaintiff Lulac's and Defendants' marks are confusingly similar as they are REY FEO and REY FEO KING & QUEENS DIES Y SEIS DE SEPTIEMBRE RIVER PARADE and their goods and services are closely related.

281.   Defendants also own Registration No. 6,702,109 for the mark THE PEOPLE'S KING registered April 12, 2020 (based on Serial No. 88/814,687, filed February 28, 2020), for "Charitable fundraising services for prospective college graduates; Charitable fundraising to support prospective college graduates" in Int'l Class 36 and alleges a date of first use by RFSF in commerce of November 4, 2021.

282.   At the time Defendants filed Application Serial No. 88/814,687, RFSF had no bona fide intent to use, nor was it using, THE PEOPLE'S KING mark, and Defendants' sworn

statements in its trademark application that the submitted specimens for the Accused Marks were evidence of RFSF's use of THE PEOPLE'S KING were false.

283.   Plaintiff has used THE PEOPLE'S KING with respect to describing REY FEO's "Charitable fundraising services for prospective college graduates; Charitable fundraising to support prospective college graduates" since at least as early as August 8, 1987.

### TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Mark

284.   At the time Defendants filed trademark applications for TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP in 2020 and 2022, they knew that Plaintiff Lulac was the prior user of the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP mark, using it exclusively and continuously since at least 2013.

285.   At the time Defendants filed trademark applications for TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP in 2020 and 2022, they knew that RFSF was not the sole owner of the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP mark, and that Plaintiff Lulac was the owner of same.

286.   Plaintiff Lulac has contracted with Alamo Colleges since 1997 with respect to the LULAC COUNCIL #2 PARENT/CHILD SCHOLARSHIP and was the first user of TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP to refer to Lulac's scholarship program at least as early as 2013.

287.   Defendants previously filed an application to register TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP, Application Serial No. 88/779,134, for "Financial administration of scholarship programs" in Int'l Class 36 on January 30, 2020, on a 1(b) Intent to Use basis.

288.     On April 21, 2020, Defendants received a Nonfinal Office Action for Application Serial No. 88/779,134, wherein the assigned Trademark Examiner recognized "TOM MORTON SANDOVAL" to identify a particular living individual, *inter alia*, and RFSF was required to respond in clarification of this matter as an applicant must provide a written consent personally signed by the named individual to register a mark that consists of or comprises the name of a particular living individual pursuant to 15 U.S.C. § 1052(c).

289.     On April 30, 2020, Defendants responded to the Nonfinal Office Action dated April 21, 2020, by making the fraudulent statement that "The name(s), portrait(s), and/or signature(s) shown in the mark does not identify a particular living individual."

290.     Tom Morton Sandoval is the name of a living individual.

291.     Tom Morton Sandoval is a member of Lulac and has served for RFSF.

292.     On November 20, 2020, the USPTO issued a Notice of Allowance for Application Serial No. 88/779,134 for the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP mark.

293.     On May 10, 2020, Defendants filed a Request for Extension of Time to file a Statement of Use for a six-month period.

294.     On December 13, 2021, Defendants abandoned Application Serial No. 88/779,134 for the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP mark by failing to timely file a Statement of Use or Request for Extension of Time to file a Statement of Use.

295.     On March 1, 2022, Defendants refiled an application to register TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP, Application Serial No. 97/289,132, for "Financial administration of scholarship programs; Providing educational scholarships" in Int'l Class 36 on a 1(a) Actual Use basis.

296. Defendants filed Application Serial No. 97/289,132 with the fraudulent statement that "The name(s), portrait(s), and/or signature(s) shown in the mark does not identify a particular living individual."

297. Application Serial No. 97/289,132 was published for opposition on January 17, 2023.

298. Plaintiff filed its opposition to the application for TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Mark and the opposition was sustained as of August 16, 2023.

299. On August 17, 2023, Application Serial No. 97/289,132 was abandoned.

300. Defendants were fully aware that Tom Morton Sandoval was still alive at the time the application was filed and that he is still alive; however, Defendants fraudulently stated that Tom Morton Sandoval was not a living person at the time of filing in order to secure registration of the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Mark pursuant to its Application Serial Nos. 88/779,134 and 97/289,132 without first obtaining written, signed consent.

301. At the time Defendants filed Application Serial Nos. 88/779,134 and 97/289,132, RFSF had no bona fide intent to use, nor was it using, the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP mark.

302. Specimens submitted in connection with Defendants' TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP applications showed use of the same mark by Plaintiff Lulac.

303. The trademark or service mark TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP was never transferred or assigned to Defendant RFSF by Plaintiff when RFSF was formed in 1975 (operating as Lulac Scholarship Committee, Inc. at the time), when the

trademark applications for same was filed by RFSF in 2020 and 2022, nor was it transferred to RFSF any time thereafter.

**Use, Likelihood of Confusion, and Fraudulent Registrations of the Accused Marks**

304.    Defendants' trademark registrations and applications for the Accused Marks are invalid and should be cancelled because at the time RFSF filed the applications, they knew that Plaintiff Lulac was the owner of the Accused Marks.

305.    Plaintiff Lulac's and Defendants' marks are identical as they are FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP and their goods and services are closely related.

306.    Plaintiff Lulac's use of its FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP marks has been valid and continuous since its date of first use.

307.    Plaintiff Lulac's use of its FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP marks predate both Defendant RFSF's alleged first use of and application for registration of the Accused Marks and establishes Lulac's priority in the Accused Marks under United States and State trademark laws.

308.    Plaintiff Lulac's FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP marks: (a) are symbolic of extensive goodwill established by Lulac; (b) have acquired a high degree of recognition through continued use and expenditures of time, effort, and money in advertising and promotion; and (c) are distinctive and serve as a unique identifier of the goods and services offered by Lulac.

309.    Defendants knew about Plaintiff Lulac's use of the FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, and REY FEO marks for over 70 years before RFSF allegedly used the Accused Marks in the same trade territory and same channels of trade.

310.    Defendants knew about Plaintiff Lulac's use of the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP before RFSF allegedly used the Accused Marks in the same trade territory and same channels of trade.

311.    Defendant RFSF's goods and services with which it uses the Accused Marks, as claimed in RFSF's trademark applications, and the goods and services with which Plaintiff Lulac uses its FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP marks, are offered for sale and are sold through the same channels of trade and offered and sold to the same class of purchasers as Lulac.

312.    Plaintiff Lulac is the prior user of the Accused Marks and Defendant RFSF is a licensee whose use of the Accused Marks inured to the benefit of Lulac.

313.    Defendants' trademark registrations and applications listed above are all invalid and require cancellation because they were fraudulently filed, specifically in that they were filed in the name of the wrong owner (and are void *ab initio*), were not being used by RFSF as its solely owned trademarks, and because Defendants made false declarations in order to secure the registrations and published application.

314.    Defendants' sworn statements in its trademark applications that it was the sole owner of the Accused Marks were false.

315.    Defendants' sworn statements in its trademark applications of its dates of first use of the Accused Marks were false.

316.    Defendants' sworn statements in its trademark applications that the submitted specimens for the Accused Marks were evidence of RFSF's use of the Accused Marks were false.

317.    Defendants' sworn statements in trademark applications for TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP that "The name(s), portrait(s), and/or signature(s) shown in the mark does not identify a particular living individual" was false.

318.    The specimens filed with Defendants' trademark applications for the Accused Marks showed evidence of use by Plaintiff Lulac.

319.    Plaintiff Lulac formed the Defendant entity known as RFSF many years ago in 1975 to function as a conduit for funds raised for scholarships to be tax-exempt.

320.    Plaintiff Lulac and Defendant RFSF have had an agreement regarding the use of the Accused Marks since RFSF was formed by Lulac, wherein Lulac maintained – and was judicially found to have – ownership of same.

321.    Defendant RFSF is a related company to Plaintiff Lulac and any use of the mark by RFSF inures to the benefit of Lulac.

322.    Defendant RFSF and Plaintiff Lulac entered into a partnership with respect to Lulac's various programs, activities, events, and scholarships, whereby RFSF was accountable to Lulac as a fiduciary.

323.    Defendants RFSF and Johnny Gabriel (as Chairman of RFSF) were fiduciaries owing certain duties to partner Plaintiff Lulac, including to act in Lulac's best interests and to provide Lulac an accounting.

### CONSEJO'S INVOLVEMENT WITH AND LICENSE OF REY FEO MARK

306.    Consejo Real de Reyes Feos Anteriores, Inc. d/b/a Rey Feo Consejo Educational Foundation ("Consejo") was assisted by Lulac in its formation in 1982.

307.     In around 1980, Logan Stewart met with Lulac regarding the establishment of an organization of former REY FEOs to support Lulac's scholarship programs, whereby Lulac loaned Consejo money to get started and gave Consejo permission to use REY FEO in its name.

308.     It was through Logan Stewart and Lulac's efforts that the REY FEO was formally invited to be and recognized as a part of San Antonio's Fiesta® in 1980, giving REY FEO equal billing with the only other male Fiesta® royalty, the Cavalier's King Antonio.

309.     Today, many of Consejo's members aspire to be nominated as a candidate for REY FEO to fulfill the promise made by Lulac in 1947 to promote the transformative power of education for San Antonio youth.

310.     Consejo was instrumental in the development of Plaintiff Lulac's REY FEO program and scholarships.

311.     Consejo has been actively involved in the selection and reign of REY FEO for over a decade.

312.     Consejo and its members underwrite and produce both the free, public crowning of the REY FEO at Main Plaza and the Crown Celebration after-party to help kick-off Fiesta®.

313.     In 2010, the City of San Antonio awarded Consejo the contract to produce and manage a ten-day event at Market Square now known as Fiesta de los Reyes at Market Square.

314.     The second major fundraiser is the annual Noche de Los Reyes Gala held every November.

315.     Consejo also underwrites program expenses associated with the elementary school visits by the REY FEO to spread his important message about education.

316.     Since 2011, the organization has contributed $535,000 to the REY FEO scholarship funds.

317.     With over a hundred members and many former REY FEOs, Consejo has become an integral and essential partner of Lulac in connection with FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES and REY FEO programs, activities, events, and scholarships.

318.     From 2012 to present, Defendants have entered into agreements with Consejo regarding use of the REY FEO name to the exclusion of Lulac.

319.     The 2012 Memorandum of Agreement between RFSF and Consejo falsely asserted RFSF's exclusive ownership of the REY FEO trademark.

320.     The 2012 Memorandum of Agreement falsely represents that RFSF owned the rights and title to REY FEO "as established by a Texas District Court Decree."

321.     The 2012 Memorandum of Agreement "allows the Consejo the right to use the term 'Rey Feo' on behalf of the current Rey Feo in any of its advertising, programs, or activities."

322.     The 2012 Memorandum of Agreement also includes a provision whereby RFSF "holds the Consejo harmless from any expenses incurred due to any third party asserting that the Consejo is liable to any third party due to the acts of [RFSF]."

323.     In 2012, RFSF originally drafted the agreement to include Lulac.

324.     Defendants excluded Plaintiff Lulac in the final draft of this 2012 Memorandum of Agreement signed by Walter Serna as Regent of the Consejo and by Johnny Gabriel and Tom Sandoval as Chairman and President of RFSF, respectively (then called "LULAC Rey Feo Scholarship Committee, Inc.") on October 4, 2012.

325.     The 2012 Memorandum of Agreement kept a provision regarding a joint committee between Lulac, RFSF, and Consejo to select REY FEO candidates and requirement that RFSF provide Consejo and Lulac with financials by October 30 of each year.

326.   Defendants never provided these financials to Lulac.

327.   Defendants never allowed Lulac to participate in the joint committee.

328.   In the 2021 Agreement, it was agreed between Defendant RFSF and Consejo that Lulac's FERIA event would be combined with the Noche de Los Reyes even hosted in the fall by Consejo without consultation or consent by Lulac.

329.   As a result of the 2021 Agreement, Plaintiff was unable to host FERIA DE LAS FLORES as a separate fundraising event in October 2022.

330.   The 2021 Agreement between RFSF and Consejo falsely asserted RFSF's exclusive ownership of the REY FEO trademark.

331.   The 2021 Agreement grants from RFSF a nonexclusive license of the REY FEO mark to Consejo.

332.   Under this 2021 Agreement, Consejo is required to pay RFSF a $100,000.00 fee annually upon RFSF's selection of a Consejo nominee for REY FEO.

333.   Defendant RFSF never provided its 2012 and 2021 agreements with Consejo to Lulac before they were signed.

334.   Defendants interfered with the past business relationship between Plaintiff Lulac and Consejo.

335.   Defendants prevented the formation and/or continuation of a business relationship between Plaintiff Lulac and Consejo.

336.   Defendants misrepresented to Consejo that RFSF is the sole owner of the Accused Marks.

337.   Defendants have disparaged Plaintiff Lulac to Consejo.

338.    Defendants have represented to Consejo that Plaintiff Lulac is not the rightful owner of the Accused Marks and is an infringer.

339.    Defendants acted with a conscious desire to prevent the formation and/or continuation of a business relationship between Plaintiff Lulac and Consejo or knew the interference with the formation and/or continuation of a business relationship between Plaintiff Lulac and Consejo was certain or substantially certain to occur as a result of their conduct.

340.    But for Defendants' wrongful acts, there is a reasonable probability Plaintiff Lulac would have entered into a business relationship with Consejo.

341.    Plaintiff Lulac has suffered actual harm as a result of Counter-Defendants' acts.

342.    Additionally, Defendant RFSF has induced third-party Consejo to infringe the Accused Marks.

343.    Plaintiff seeks recovery of any monies received by Defendants from Consejo in the past based on any agreements RFSF made with Consejo involving Lulac's Marks, as well as the imposition of a constructive trust for any past or future payments based on the same.

344.    The previous REY FEO 74 was Laurence Kurth, who is a member of Consejo and Akerman LLP. Laurence Kurth has acted as attorney for RFSF at one point.

345.    David Jones, RFSF's former attorney, was also with Akerman LLP and a member of Consejo.

346.    Ricardo Cedillo represented the Parties in *Rangel v. Munoz.*

347.    Counter-Defendant Johnny Gabriel and his family members, Ronnie Gabriel (son) and Dr. Sal Barbaro III (son-in-law), are members of Consejo.

### REINA LINDA MARK

347.    Defendants filed U.S. trademark application Serial Nos. 76/567,489 for LA REINA LINDA for "Charitable scholarship fundraising services" in Int'l Class 36 on December 18, 2003, on a 1(b) Intent to Use basis.

348.    This application was filed around the same time as RFSF's 2004 application for REY FEO.

349.    On December 20, 2007, Defendant RFSF abandoned Application Serial No. 76/567,489 for the LA REINA LINDA mark by failing to timely file a Statement of Use or Request for Extension of Time to file a Statement of Use.

350.    On March 1, 2022, Defendants refiled an application to register REINA LINDA, Application Serial No. 77/931,190, for "Charitable fund raising; Providing educational scholarships" in Int'l Class 36 on a 1(b) Actual Use basis, which registered November 5, 2013, Registration No. 4,429,037.

351.    Defendants created REINA LINDA (translated from Spanish to the "Beautiful Queen") to compete with Plaintiff Lulac's REINA DE LA FERIA DE LAS FLORES and serve as the "complementary" royalty to REY FEO (translated from Spanish to the "Ugly King").

352.    At the time Defendants filed the applications, they knew that Plaintiff Lulac was owner of the confusingly similar Accused Marks, REINA DE LA FERIA DE LAS FLORES and REY FEO.

353.    Plaintiff Lulac's and Defendants' marks are confusingly similar as they are REINA DE LAS FERIA DE LAS FLORES and REY FEO, and REINA LINDA and their goods and services are closely related.

## COUNT I: FEDERAL FALSE DESIGNATION OF ORIGIN OR SOURCE

354.    Plaintiff incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

355.    Plaintiff Lulac's FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Marks are distinctive and indicate to consumers that its goods and its services originate from a sole source.

356.    Plaintiff Lulac's FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Marks on its goods and services symbolize the substantial goodwill of Lulac, resulting in significant recognition and sales of its high-quality goods and services by the consuming public.

357.    Defendants' false designations of origin or source are likely to cause confusion, to cause mistake, or to deceive as to the origin or source of Plaintiff Lulac's goods or services.

358.    Defendants repudiated its license to use the Accused Marks in 2021, so its license to use the Accused Marks ended.

359.    Defendants' adoption and use in commerce of false designations of origin or source is likely to cause consumers to believe that Defendants' FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP goods or services and Plaintiff Lulac's FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP goods or services come from the same origin or source, or that Lulac sponsors or approves the goods or services of Defendants, or that Defendants and Lulac are somehow affiliated, connected, or associated with one another when, in fact, they are not.

360.     Defendants' use in commerce of false designations of origin or source is injuring the goodwill of FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP.

361.     The actions of Defendants constitute a violation of the federal Lanham Act, 15 U.S.C. § 1125.

362.     At no time has Plaintiff Lulac authorized Defendants to create, distribute, sell, offer for sale, use, or otherwise put into commerce Defendants' FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP goods and services.

363.     Defendants are knowingly and intentionally misrepresenting and falsely designating to the public the affiliation, connection, association, origin, source, endorsement, sponsorship, and approval of Defendants' FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP goods and services to create a likelihood of confusion by the public as to the affiliation, connection, association, origin, source endorsement, sponsorship, and approval of Defendants' goods and services with Plaintiff Lulac.

364.     Pursuant to 15 U.S.C. § 1116, Plaintiff Lulac is entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing use of false designations of origin or source.

365.     Defendants' false designations of origin or source is irreparably injuring Plaintiff Lulac's goodwill and eroding Lulac's share of market, and unless enjoined by this Court, will continue to do so.

366.     Pursuant to 15 U.S.C. § 1117, Plaintiff Lulac is entitled to damages for Defendants' violations, an accounting of profits made by Defendants on sales of their goods or services under the Accused Marks, and recovery of Lulac's costs of this action.

367.     Defendants have willfully and wantonly used false designations of origin or source, and its actions have been calculated to confuse, mislead, or deceive consumers, and to injure the goodwill of Plaintiff Lulac.

368.     The intentional engaging in false designation of origin or source by Defendants makes this an exceptional case entitling Plaintiff Lulac to an award of three times its actual damages and recovery of its reasonable attorneys' fees.

## COUNT II: COMMON LAW TRADEMARK INFRINGEMENT

369.     Plaintiff incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

370.     Plaintiff Lulac's adoption and use of the FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Marks predates any alleged use by Defendants in the United States, and Lulac is the senior user and owner of the Accused Marks.

371.     Defendants' use of the Accused Marks is calculated to deceive the relevant consuming public into accepting and purchasing Defendants' products in the mistaken belief that they are Plaintiff Lulac's products, or that that they are sponsored by, connected with, or supplied under the supervision of Lulac.

372.     Such actions permit, and will continue to permit, Defendants to use and benefit from the goodwill and reputation earned by Plaintiff Lulac to readily obtain customer acceptance

of its goods offered for sale, and to give Defendants' goods a salability they would not otherwise have, all at Lulac's expense.

373.    Defendants' aforementioned acts constitute trademark infringement in violation of the common law of the State of Texas.

374.    As a direct and proximate result of Defendants' above-described conduct, Plaintiff Lulac has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

375.    Unless enjoined by this Court, Defendants' above-described conduct will cause irreparable injury, for which Plaintiff Lulac has no adequate remedy at law, injury to the reputation and goodwill of Lulac, as well as confusion and deception among consumers.

376.    Defendants' acts complained of herein have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge and conscious disregard of Plaintiff Lulac's rights, were intended to cause confusion, and to trade off the goodwill in Lulac's FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Marks, making this an exceptional case and entitling Lulac to enhanced damages and attorneys' fees at least as provided under Texas Civil Practice & Remedies Code § 41.003.

## COUNT III: COMMON LAW UNFAIR COMPETITION AND UNJUST ENRICHMENT

377.    Plaintiff incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

378.    Defendants' adoption and use of the Accused Marks are calculated to deceive the relevant consuming public into accepting and purchasing Defendants' products in the mistaken

belief that they are Lulac's products, or that that they are sponsored by, connected with, or supplied under the supervision of Lulac.

379.    Such actions permit, and will continue to permit, Defendants to use and benefit from the goodwill and reputation earned by Plaintiff Lulac to readily obtain customer acceptance of the goods and services offered for sale, and to give Defendants' goods and services a salability they would not otherwise have, all at Lulac's expense.

380.    By such adoption and use, Defendants have represented that its goods are those supplied by Plaintiff Lulac.

381.    This adoption and use creates the likelihood that the public will be confused or deceived.

382.    Defendants' aforementioned acts constitute unfair competition, inducing and contributing to, and indirect and vicarious palming off and palming off in violation of the common law of the State of Texas.

383.    As a direct and proximate result of Defendants' above-described conduct, Plaintiff Lulac has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

384.    Defendants' acts of unfair competition, inducing and contributing to, and indirect and vicarious palming off and palming off entitle Plaintiff Lulac to recover its damages and costs of this action, together with an accounting of profits made by Defendants' use and licenses of the Accused Marks.

385.    Unless enjoined by this Court, Defendants' above-described conduct will cause irreparable injury, for which Plaintiff Lulac has no adequate remedy at law, injury to the reputation and goodwill of Lulac, as well as confusion and deception among consumers.

386.    Under the common law of the State of Texas, Plaintiff Lulac is entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing unfair competition.

387.    Defendants' acts complained of herein have been and are grossly negligent, deliberate, willful, wanton, intentional, in bad faith, and malicious, with full knowledge and conscious disregard of Plaintiff Lulac's rights, intended to cause confusion, and to trade off the goodwill in Lulac's FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP marks, thus making this an exceptional case and entitling Lulac to enhanced damages and attorneys' fees, at least as provided under Texas Civil Practice & Remedies Code section 41.003.

388.    Plaintiff seeks the imposition of a constructive trust for any past or future payments made to Defendants based on any agreements involving Lulac's Marks.

## COUNT IV: TRADEMARK DILUTION IN VIOLATION OF TEX. BUS. & COMM. CODE § 16.103

389.    Plaintiff incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

390.    "Dilution" means dilution by blurring or dilution by tarnishment, without regard to the presence or absence of: (A) competition between the owner of a famous mark and another person; (B) actual or likely confusion, mistake, or deception; or (C) actual economic harm.

391.    The owner of a mark that is famous and distinctive, inherently or through acquired distinctiveness, in this state is entitled to enjoin another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause the dilution of the famous mark.

392.     A mark is considered to be famous if the mark is widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the goods or services of the mark's owner.

393.     Plaintiff Lulac's FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Marks are famous marks in that they are widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the goods or services of Lulac.

394.     Based on the activities described above, Defendants have diluted and continue to dilute the distinctiveness of the Plaintiff Lulac's famous FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Marks under section 16.103 of the Texas Business & Commerce Code after disavowing the license in 2020.

395.     Defendants' acts complained of above are likely to injure Plaintiff Lulac's business reputation or to dilute the famous, distinctive quality of the FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Marks by, at the very least: (i) eroding the public's exclusive identification of Lulac's famous marks, (ii) lessening the capacity of Lulac's famous Marks to identify and distinguish Lulac's goods and services, (iii) associating the Lulac's famous Marks with products and/or services of inferior quality, or (iv) by impairing the distinctiveness of Lulac's famous Marks.

396.     Defendants' adoption and use of the Accused Marks is likely to weaken or otherwise jeopardize Plaintiff Lulac's highly valuable rights in its FERIA DE LAS FLORES,

REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Marks.

397.   Defendants' adoption and use of the Accused Marks constitutes "dilution by blurring" and causes an association arising from the similarity between RFSF's Accused Marks and Plaintiff Lulac's famous FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Marks that impairs the famous Marks' distinctiveness.

398.   Defendants' adoption and use of the Accused Marks constitutes "dilution by tarnishment" and causes an association arising from the similarity between Defendants' Accused Marks and Plaintiff Lulac's famous FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Marks that harms the famous marks' reputation.

399.   Pursuant to Texas Business & Commerce Code section 16.103, Plaintiff Lulac is entitled to bring this action to enjoin Defendants from further injuring Lulac's business reputation or diluting the distinctive quality of Lulac's FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Marks.

400.   Plaintiff will be irreparably injured unless such action is enjoined by this Court as provided by Texas law.

401.   Defendants' dilution has been willful and intentional, making this case eligible for an award of enhanced profits and damages under Texas law, as well as an award of Plaintiff Lulac's attorneys' fees.

## COUNT V: CANCELLATION OF TRADEMARK REGISTRATIONS AND DENIAL OF TRADEMARK APPLICATIONS

347.   Plaintiff incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

348.   Defendants obtained its trademark registrations and published applications referenced herein, including the Accused Marks (FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP), by making false and fraudulent statements to the USPTO.

349.   Defendant RFSF was not the first to adopt or use the Accused Marks.

350.   Defendant RFSF was not the sole owner of the Accused Marks.

351.   Defendant RFSF was a mere non-exclusive licensee of the Accused Marks.

352.   Plaintiff Lulac created, adopted, and was the first user of the Accused Marks.

353.   Plaintiff Lulac never assigned or transferred the Accused Marks and goodwill to Defendants.

354.   Defendants are estopped from denying the validity of Plaintiff Lulac's ownership of the Marks based on any events, acts, or occurrences during the time of the license from 1975 to 2021.

355.   Defendants submitted examples of Plaintiff Lulac's use of the Accused Marks, FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP, as sworn evidence to the USPTO as examples of Defendant RFSF's use.

356.   Defendants' representations to the USPTO regarding their alleged use of the Accused Marks was false as set out herein.

357.   Defendants would not have gotten the registrations or publication for the Accused Marks but for its fraud on the USPTO.

358.    Defendants knew about Plaintiff Lulac's prior use of the Accused Marks, FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP, at the time they filed the trademark applications.

359.    Defendants' trademark registrations for FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP do not comply with the United States trademark law.

360.    Defendants are not entitled to trademark registrations for FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP from the USPTO.

361.    Defendants' acts have resulted in damages to Plaintiff Lulac and the Court should order that the Defendant s' trademark registrations were improperly issued and the USPTO should cancel Defendants' trademark registrations and applications for the Accused Marks.

## COUNT VI: TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS

362.    Plaintiff incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

363.    Defendants have tortiously interfered with the contracts and business relations of Plaintiff Lulac.

364.    Plaintiff Lulac had agreements with the Fiesta Commission, Queens, Alamo Colleges, and others to conduct Plaintiff's programs, activities, events, and scholarships for FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP.

365.    Defendants knew about the agreements Plaintiff Lulac had.

366.     Defendants interfered with the agreements Plaintiff Lulac had.

367.     Defendants have misappropriated the business arrangement with Plaintiff Lulac.

368.     Plaintiff had prospective business relationships with which Defendants interfered.

369.     The acts, omissions and conduct recited herein evidence Defendants' acts of tortious interference.

370.     Defendants acted with a conscious desire to prevent Plaintiff Lulac's formation of prospective business relationships with outside parties or knew that interference was certain or substantially certain to occur as a result of their conduct.

371.     Defendants' acts have resulted in damages to the Plaintiff in an amount in excess of the minimum jurisdictional limits of the Court.

372.     Plaintiff further seeks from Defendants an award of actual damages, punitive damages, attorneys' fees, interest, and costs.

373.     Plaintiff Lulac accordingly asks that Defendants and their respective agents, servants, employees, directors, and relatives and all others in actual concert or participation with them be restrained from interfering with Plaintiff's business arrangements and agreements.

## COUNT VII: BUSINESS DISPARAGEMENT

374.     Plaintiff incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

375.     Defendants have published disparaging statements about Plaintiff.

376.     Defendants have published statements that Plaintiff Lulac is a trademark infringer and is attempting to steal Defendants' alleged trademarks when, in fact, it is Defendant that is the trademark infringer.

377.    Defendants published statements are false.

378.    Defendants published written disparaging words about Plaintiff Lulac and its business, services, and commercial activities.

379.    The words were false because Plaintiff Lulac did not misappropriate Defendants' trademarks.

380.    Defendants published the words with malice.

381.    Defendants published the words without privilege.

382.    Defendants' false statements caused injury to Plaintiff Lulac, which resulted in special damages including at least loss of business and consumer goodwill.

383.    Plaintiff Lulac's business has been damaged by Defendants' unlawful actions and adoption and use of Lulac's Marks FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP.

384.    The value of Plaintiff Lulac's business is more than $75,000.00 and Defendants have damaged Plaintiff's business.

385.    Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

386.    Plaintiff's injury resulted from Defendants' malice and knowledge of the statement's falsity or reckless disregard for the truth, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003.

## COUNT VIII: BREACH OF CONTRACT

387.    Plaintiff incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

388.    Plaintiff Lulac entered into a partnership agreement with Defendant RFSF.

389.    Plaintiff Lulac entered into an agreement with Defendant RFSF to assist in selecting

of a King and Queen to be crowned every year at an annual event, receiving tax-deductible charitable contributions for Plaintiff's various scholarship programs, and raising funds for operational expenses and expenses associated with the King and Queen's reigns.

390.    Oral partnership agreements are enforceable in Texas which has adopted the Revised Uniform Partnership Act (RUPA).

391.    Defendants breached the partnership agreement with Plaintiff by claiming it owned Plaintiff Lulac's marks.

392.    Defendants breached the partnership with Plaintiff Lulac by charging it more than its share of the expenses.

393.    Defendants breached the partnership agreement with Plaintiff Lulac by refusing to allow an audit of its records as ordered by a prior judgment and required due to the partnership arrangement.

394.    Defendants breached the agreement with Plaintiff Lulac by excluding Lulac from the selection of REY FEOs.

395.    Defendants breached the agreement with Plaintiff Lulac by excluding Lulac from contracts involving the REINA DE LA FERIA DE LAS FLORES and REY FEO.

396.    Defendants breached the agreement with Plaintiff Lulac by withholding monies from Lulac.

397.    Defendants breached the agreement with Plaintiff Lulac by misappropriating Lulac's trademarks and attempting to take over Lulac's business and business opportunities.

398.    Plaintiff Lulac has suffered damages as a result of the multiple breaches of the partnership agreement.

399.    Plaintiff Lulac seeks from Defendants an award of damages for the overcharges of

expenses and underpayments of revenues.

400.    Plaintiff Lulac suffered damages as a result of the multiple breaches of the agreement.

401.    Plaintiff Lulac seeks from Defendant RFSF an award of damages for the wrongful acts of RFSF.

## COUNT IX: BREACH OF FIDUCIARY DUTY

402.    Plaintiff incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

403.    Plaintiff Lulac is the parent organization to Defendant RFSF.

404.    Defendant RFSF has been participating in a joint venture with Plaintiff Lulac since 1975.

405.    The acts of the Parties establish a partnership under Texas law.

406.    In Texas, when a general partnership has not created a written partnership agreement, the Revised Uniform Partnership Act (RUPA) governs the fiduciary duties that agents owe to principals.

407.    Defendants had and did breach the duty a) to serve; b) of loyalty; c) of care; d) of obedience; e) to inform co-partners; and f) to account to Plaintiff Lulac in the administration of Lulac programs, activities, events, and scholarships.

408.    Defendants violated their fiduciary duties of service, loyalty, care, and obedience to co-partner and Plaintiff Lulac through the above-described conduct, including their misrepresentations and misappropriation of the Accused Marks.

409.    Defendants violated their duty of care to Plaintiff Lulac by acting solely in their own best interests and using Lulac's Marks solely for Defendants' gain.

410.    Defendants violated their duty of obedience by acting to the detriment of Plaintiff Lulac.

411.    Defendants violated their duty to inform by negotiating and entering into contracts and agreements regarding Plaintiff Lulac's Marks without informing Lulac.

412.    Defendants violated their duty to account by failing to provide Plaintiff Lulac with accurate financial information.

413.    Defendants usurped opportunities belonging to its principal, Plaintiff Lulac.

414.    Defendants competed with its principal, Plaintiff Lulac.

415.    Defendants intentionally, knowingly, or recklessly misapplied property RFSF held as a fiduciary or property of a financial institution in a manner that involved substantial risk of loss to Plaintiff Lulac as the owner of the property.

416.    Plaintiff Lulac is entitled to damages for the wrongful acts of Defendants.

417.    Plaintiff Lulac is entitled to the disgorgement of all ill-gotten profits from Defendants.

## **EXEMPLARY DAMAGES**

418.    Plaintiff incorporates by reference the factual allegations in this Complaint as though fully set forth herein.

419.    All of the foregoing acts committed by Defendants, and others acting in concert with it and/or on its behalf were committed maliciously and intentionally or with gross negligence in reckless disregard of the rights of Plaintiff Lulac, so as to entitle Lulac to exemplary damages.

420.    In addition, Defendants and others acting in concert with them and/or on their behalf have committed fraud against Plaintiff Lulac.

421.    The above also entitles Plaintiff Lulac to exemplary damages.

422.     Plaintiff Lulac requests that the Court award exemplary damages.

423.     Plaintiff Lulac further seeks from Defendant an award of actual damages, punitive damages, attorneys' fees, interest, and costs.

424.     Defendants' acts have resulted in damages to the Plaintiff in an amount in excess of the minimum jurisdictional limits of the Court.

## NOTICE OF LITIGATION HOLD REQUIREMENT

425.     Defendants are hereby notified that it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendants know, or reasonably should know, may be relevant to actual or potential claims, Claims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereinafter collectively referred to as "Potential Evidence").

426.     As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media,

peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, Android-based smart phones, Windows-based smart phones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of all of Defendants' agents or employees if Defendants' electronically stored information resides there.

427.    Defendants are hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendants' claims and/or defenses. To avoid such a result, Defendants' preservation duties include, but are not limited to, the requirement that Defendants immediately notify their agents and employees to halt and/or supervise the auto-delete functions of Defendants' electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## **JURY DEMAND**

428.    Plaintiff Lulac hereby demands a trial by jury.

## **COUNTER-AFFIRMATIVE DEFENSES**

429.    Plaintiff Lulac would assert that any defense of the Defendants predicated upon a Statute of Limitations, or the Doctrine of Laches is precluded by the Defendants' fraud and/or fraudulent concealment.

430.    Plaintiff Lulac would assert that any defense of the Defendants predicated upon a Statute of Limitations, or the Doctrine of Laches is precluded by the discovery rule.

## **PRAYER**

WHEREFORE, Plaintiff Lulac demands judgment for itself and against Defendants by this Court as follows:

A.      Enter an temporary and permanent injunction prohibiting Defendants and their respective officers, directors, agents, servants, employees, related companies, licensees, and all persons acting for, with, by, though, and under any of them, from any and all use and direct and indirect infringement and dilution of the Plaintiff's FERIA DE LAS FLORES, REINA DE LA FERIA DE LAS FLORES, REY FEO, and TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Marks, and any other Plaintiff's marks, names and/or logos, and false designations of origin or source and Defendants' dilution, unfair competition and palming off and business disparagement and tortious interference or any derivation thereof directly or indirectly, for itself, or through, on behalf of, or in conjunction with the sale or offer of any products or services by Defendant;

B.      Enter temporary and permanent injunction prohibiting Defendants and their respective officers, directors, agents, servants, employees, related companies, licensees, and all persons acting for, with, by, though, and under any of them, from collecting trademark licensing fees from Consejo or any third-party for use of the Accused Marks;

C.      The Court request that the USPTO cancel Registration Nos. 6,431,439 for FERIA DE LAS FLORES, 5,495,292 for REINA DE LA FERIA DE LAS FLORES, and 2,935,872 for REY FEO, as well as find that the TOM MORTON SANDOVAL PARENT/CHILD SCHOLARSHIP Mark is owned by Plaintiff, based on the decision by the USPTO;

D.      Enter judgment in favor of Plaintiff for actual damages in an amount to be determined by the Court, where such damages are trebled due to Defendants' willful and

intentional disregard of Plaintiff's known rights, pursuant to at least 15 U.S.C. § 1117 and Texas Business & Commerce Code sections 16.102-16.104;

E.      Enter judgment in favor of Plaintiff for Defendants' profits in an amount to be determined by the Court, where such profits are trebled due to Defendants' acts of willful and intentional disregard and violation of Plaintiff's known rights, pursuant to at least 15 U.S.C.§ 1117 and Texas Business & Commerce Code sections 16.102-16.104 and for all trademark license fees received by Defendants;

F.      Award Plaintiff all costs of the action and reasonable attorneys' fees pursuant to the provisions of at least 15 U.S.C. § 1117 and Texas Business & Commerce Code sections 16.102-16.104;

G.      Order Defendant to file with this Court and to serve upon Plaintiff, within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

H.      Allow Plaintiff recovery of all damages it has sustained because of Defendants' activities and payment of all improperly reign expenses of REY FEO paid from scholarship donations which exceed $1,000,000.00;

I.      Order that an accounting be directed to determine Defendants' profits resulting from the activities complained of herein, and that such profits be paid over to Plaintiff, increased as the Court finds to be just under the circumstances of the case;

J.      Allow Plaintiff recovery of its costs of this action and prejudgment and post-judgment interest; and

K.      Plaintiff be awarded such other relief as the Court deems just and equitable.

Dated: October 13, 2023.

Respectfully submitted,

/s/ Charles W. Hanor
Charles W. Hanor
Texas Bar No. 08928800

Ayesha M. Malik
Texas Bar No. 24118449

HANOR LAW FIRM PC
750 Rittiman Road
San Antonio, Texas 78209
Telephone: (210) 829-2002
trademarks@hanor.com

*Attorneys for Plaintiff*
*Original Lulac Council No. 2*