IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ORIGINAL LULAC COUNCIL NO. 2,<br>*Plaintiff* | §<br>§<br>§ | |
| -vs- | §<br>§ | SA-23-CV-01307-XR |
| REY FEO SCHOLARSHIP<br>FOUNDATION, INC., JOHN D.<br>GABRIELSR.,<br>*Defendants* | §<br>§<br>§<br>§ | |

## ORDER

On this day, the Court considered the above-captioned case. Before the Court is Plaintiff Original LULAC Council No. 2's motion to disqualify Defendants' counsel, Attorney Ricardo G. Cedillo (ECF No. 16), Defendants' response (ECF No. 20), and Plaintiff's reply (ECF No. 21). After consideration, Plaintiff's motion is **DENIED**.

## BACKGROUND

Defendant Rey Feo Scholarship Foundation ("RFSF" or "Defendant RFSF") is a nonprofit corporation founded in 1975. ECF No. 20 at 4; ECF No. 20-2. Defendant John Gabriel ("Johnny Gabriel" or "Defendant Gabriel") is currently the Chairman of the Board of RFSF, ECF No. 16 at 5, but previously served as an officer of the unincorporated entity named Original LULAC Council No. 2, *Id.* at 24. Plaintiff Original LULAC Council No. 2 ("Plaintiff" or "New LULAC Council") is a nonprofit corporation founded in 2012. ECF No. 20-10.

In effect, the parties contest which entity, Plaintiff or Defendant RFSF, has the right to control the following four marks: (1) Rey Feo; (2) Feria De Las Flores; (3) Reina De La Feria De Las Flores; and (4) the Tom Morton Sandoval Parent/Child Scholarship (collectively, the

1

"Asserted Marks"). ECF Nos. 1, 10. In its complaint, Plaintiff alleges a variety of claims, including: (1) federal false designation of origin or source under 15 U.S.C. § 1125; (2) common law trademark infringement; (3) common law unfair competition and unjust enrichment; (4) trademark dilution in violation of Tex. Bus. & Comm. Code § 16.103; (5) cancellation of trademark registrations for the Asserted Marks; (6) tortious interference with contractual and business relations; (7) business disparagement; (8) breach of contract; and (9) breach of fiduciary duty. ECF No. 1.

### A.  Corporate History

The parties present a complicated corporate history. Both claim a legacy of organizing scholarships for San Antonio area youth. ECF No. 16 at 4–5. Original LULAC Council No. 2 was established as an unincorporated entity in 1929 and was a charter council of the League of United Latin American Citizens. ECF No. 16 at 4, 9, 15. Original LULAC Council No. 2 was then incorporated on July 28, 1993, as "Original LULAC Council No. 2, Inc." *Id.*; ECF No. 20-12. However, "Original LULAC Council No. 2, *Inc.*" ("Defunct LULAC Council") later forfeited its existence in 1995. ECF No. 20; ECF No. 20-9. [1] In 2012, Tom Sandoval filed a Certificate of Nonprofit Formation for "Original LULAC Council No. 2",[2] an entity distinct from the Defunct LULAC Council. *See* ECF Nos. 20-10, 20-11, 20-12, 20-13. The New LULAC Council is the formal entity in existence today, and the Plaintiff in the instant action. ECF No. 28.[3]

In contrast, RFSF began as the "San Antonio LULAC Council No. 2 Scholarship Committee, Inc." on June 13, 1975. ECF No. 16 at 4; ECF No. 20 at 3. San Antonio LULAC

---

[1] In this order, the Court assumes *arguendo* that the unincorporated Original LULAC Council No. 2, existing prior to 1993, and Original LULAC Council No.2, Inc. were one continuous entity.

[2] In this order, the Court will refer to the Defunct LULAC Council and the New LULAC Council collectively as the "LULAC Entities."

[3] Notably, instead of reviving the Defunct LULAC Council, Tom Sandoval established the New LULAC Council as a separate entity. *See* ECF Nos. 20-9, 20-10, 20-11, 20-12, 20-13.

Council No. 2 Scholarship Committee, Inc. was subsequently renamed to "LULAC Scholarship Committee, Inc." on March 24, 1977. ECF No. 20 at 4–5. LULAC Scholarship Committee, Inc. then became "LULAC Rey Feo Scholarship Committee, Inc." on July 31, 1992. *Id*. Decades later, LULAC Rey Feo Scholarship Committee, Inc. was again renamed to "Rey Feo Scholarship Foundation," in a filing signed by the chairman of its board, Johnny Gabriel, on September 4, 2014. ECF No. 16 at 5.

B.   Prior Lawsuits

During the 1990s, both parties to this suit found themselves ensnared in litigation repeatedly. The first of these suits, *Rangel et. al. v. Munoz et. al.* (the "Consolidated 1990-1991 Lawsuit"), stemmed from a supposed "coup" attempt by David Villareal, where individuals led by Villareal aimed to take control of the unincorporated Original LULAC Council No. 2 and two other closely affiliated entities. ECF No. 16 at 9–10.

Tom Sandoval, claiming to represent the unincorporated Original LULAC Council No. 2, led the coalition opposing Villareal. *Id.* And Johnny Gabriel appeared in that litigation alongside the opposing group led by Tom Sandoval. ECF No. 16-5 at 1. In essence, the dispute arose out of internal division between members of the unincorporated Original LULAC Council No. 2. *Id.*; ECF No. 16-1. In the Consolidated 1990-1991 Lawsuit, the 150th Bexar County District Court addressed three key issues: (1) who were the legitimate trustees of the East Park Place Apartments; (2) who represented the unincorporated Original LULAC Council No. 2; and (3) who were the legitimate trustees of the LULAC Scholarship Committee, Inc. ECF No. 16-1 at 1–2. Bexar County District Judge John J. Specia ultimately determined that Tom Sandoval's group represented the unincorporated Original LULAC Council No. 2 and further held that Sandoval's group was the legitimate board of trustees for the East Park Place Apartments and LULAC Scholarship

3

Committee, Inc. ECF No. 16-5 at 3–5. According to Plaintiff, Mr. Cedillo, who is the subject of this motion to disqualify, represented the unincorporated Original LULAC Council No. 2 in that action. *See* ECF No. 16 at 8–9. In contrast, Defendants assert that Mr. Cedillo's involvement in the case was limited to his representation of Tom Sandoval and Leon Hernanadez in their individual and representative capacities for LULAC Scholarship Committee, Inc. and that his representation was adverse to the unincorporated Original LULAC Council No. 2 at the time. ECF No. 20 at 8–9, 14–15.

In 1992, RFSF (then the "LULAC Scholarship Committee, Inc.") brought suit in a separate action against David Villareal in a case styled *LULAC Scholarship Committee, Inc. v. David Villareal, individually and as purported president of LULAC Council #2* (the "1992 Lawsuit"). ECF No. 20 at 9; ECF No. 16 at 11. The key issues involved in that action were (1) who would have the right to use the "Rey Feo" name and (2) whether David Villareal had the authority to act as President or Chairman of the LULAC Scholarship Committee, Inc. At the conclusion of this suit, Judge Specia again ruled against Villareal in his findings of fact and conclusions of law, rejecting Villareal's claim of authority and determining that "[t]he name 'REY FEO' was not transferred to Lulac Scholarship Committee, Inc. in 1975, but was used by both Lulac Council No. 2 and Lulac Scholarship Committee, Inc." ECF No. 16-10. Mr. Cedillo did not appear on behalf of any party in the 1992 lawsuit.[4]

In 1993, RFSF (then "LULAC Rey Feo Scholarship Committee, Inc.") found itself at the center of a different case styled *LULAC Rey Feo Scholarship Committee, Inc., et al. v. City of San Antonio, et al. v. Tom Sandoval and Jose Botello* (the "1993 Lawsuit"). Properly viewed as a continuation of the prior litigation, LULAC National was now alleging Villareal's group was

---

[4] Nonetheless, Plaintiff makes much of the fact that Mr. Cedillo cited to Judge Specia's ruling in a Statement of Position filed in the Consolidated 1990-1991 Lawsuit. ECF No. 16 at 11–13.

actually the "LULAC Council No. 2" referenced in Judge Specia's Finding of Fact and Conclusions of Law in the 1992 Lawsuit. ECF No. 16 at 19. In part, the 1993 Lawsuit involved allegations of infringement and misappropriation of the "Rey Feo" service mark. ECF No. 16 at 18. The 1993 Lawsuit was originally filed in Bexar County District Court but was subsequently removed to federal court. *Id.* The parties to that case settled on June 21, 1995. *Id.* at 20.[5] Mr. Cedillo did not represent any party in the 1993 lawsuit. *See generally* ECF Nos. 16-13, 16-14.

Also mentioned by the parties is *Velez v. De Lara*, 905 S.W.2d 43 (Tex. App. – San Antonio), Case No. 04-93-00369-CV (the "1993 *Velez v. De Lara* Appeal"). This case was an appeal of the ruling by Bexar County District Court Judge Andy Mireles that vacated an order for discovery sanctions against Appellees, Jose Garcia De Lara and Jose Botello, former national president and treasurer, respectively, of the unincorporated LULAC Council No. 2. ECF No. 16 at 17; ECF No. 16-21 at 1; ECF No. 20.[6] Plaintiff contends that Mr. Cedillo represented the unincorporated LULAC Council No. 2 in this action. ECF No. 16 at 17. Defendants counter that Mr. Cedillo only appeared on behalf of Appellees, Botello and De Lara, in their individual capacities and did not represent the unincorporated Original LULAC Council No. 2. ECF No. 20 at 9–10.

In 1998, Original LULAC Council No. 2, Inc. filed suit against LULAC Rey Feo Scholarship Committee, Inc. in a case styled *The Original LULAC Council No. 2, Inc. and Jose Botello v. LULAC Rey Feo Scholarship Committee, Inc.*, (the "1998 lawsuit") in the 131st District

---

[5] As part of this settlement, LULAC National agreed to "relinquish and surrender all claims to the trade name 'REY FEO' and/or any derivative thereof as well as any and all claims to the REY FEO logos and insignias. LULAC REY FEO SCHOLARSHIP COMMITTE, INC. and LULAC COUNCIL #2 agree to relinquish and surrender any and all claims to the trade name 'LULAC' and/or any derivative thereof as well as any and all claims to the LULAC logos and insignias." ECF No. 16-16.

[6] Ultimately, the appellate court held that the trial court had authority to set aside the order of sanctions and that it did not abuse its authority in ruling on appellants' motions for additional sanctions. ECF No. 16-21 at 3–4.

Court in Bexar County, Texas. ECF No. 16 at 7; ECF No. 20 at 10.[7] The 1998 Lawsuit dealt with allegations of malfeasance against certain trustees and board members of the LULAC Rey Feo Scholarship Committee, Inc. relating to the provision of financial statements and disbursement of funds from the Rey Feo Scholarship Committee, Inc. ECF No. 20 at 10. The Defunct LULAC Council also alleged breaches of the settlement agreement in the 1993 lawsuit. ECF No. 16 at 21. Ultimately the parties in the 1998 Lawsuit reached an agreed final judgment, requiring certain members of the LULAC Rey Feo Scholarship Committee to resign and appointing Johnny Gabriel and Tom Sandoval, among others, to a new board. ECF No. 16 at 21; ECF No. 16-19 at 1–3. Mr. Cedillo did not appear as counsel on behalf of any party to the 1998 Lawsuit.

### C. Motion to Disqualify Defendant's Counsel (ECF No. 16)

Plaintiff urges this Court to disqualify Mr. Cedillo and his firm as counsel for Defendants RFSF and Gabriel on two grounds: (1) that Mr. Cedillo appeared as counsel of record for both the LULAC Entities in matters that were substantially related to the instant action and thus his current representation violates Texas Disciplinary Rule of Professional Conduct 1.09, ABA Model Rule 1.09, and ABA Model Rule 1.10; and (2) Mr. Cedillo is a necessary witness to this case and therefore his representation of RFSF is in violation of Texas Disciplinary Rule of Professional Conduct 3.08 and ABA Model Rule 3.7. *See* ECF No. 16. First, Plaintiff contends that Mr. Cedillo's prior representations involving the Defunct LULAC Council disqualify him from representing RFSF in the instant litigation. ECF No. 16 at 8. Plaintiff insists that the New LULAC Council and the Defunct LULAC Council are one and the same and collectively have been in continuous existence since 1929, either as an unincorporated nonprofit association or a corporation. ECF No. 16 at 8; ECF No. 21 at 12. Plaintiff also contends that New LULAC Council

---

[7] Notably, by this time, Original LULAC Council No. 2, Inc. had forfeited its existence. ECF No. 20 at 6–7; ECF No. 20-9.

was in privity with RFSF throughout the time period spanning the 1990s litigations and that the two shared interests and officers until recent history. ECF No. 16 at 27. In regard to Texas Disciplinary Rule of Professional Conduct 3.08 and ABA Model Rule 3.7, Plaintiff insists that Mr. Cedillo may be compelled to furnish testimony that is adverse to RFSF given that his alleged prior representation of the LULAC Entities allegedly established that the Rey Feo mark was not transferred to RFSF. ECF No. 16 at 33.

## LEGAL STANDARD

"Motions to disqualify an attorney are substantive motions determined by standards developed under federal law and are governed by the ethical rules announced by the state and national professions in light of the public interest and rights of the litigants." *Islander E. Rental Program v. Ferguson*, 917 F. Supp. 504, 508 (S.D. Tex. 1996) (citations omitted) (citing *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992)); *see also In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009); *Hillman Grp., Inc. v. KeyMe, LLC*, 439 F. Supp. 3d 845, 851 (E.D. Tex. 2020). The Fifth Circuit's approach to ethical issues is "sensitive to preventing conflicts of interest." *In re ProEducation Int'l, Inc.*, 587 F.3d at 299 (quoting *In re Am. Airlines*, 972 F.2d 605, 611 (5th Cir. 1992), *cert. denied*, 507 U.S. 912 (1993)). A "[d]istrict [c]ourt is obliged to take measures against unethical conduct occurring in connection with any proceeding before it." *In re Am. Airlines*, 972 F.2d at 611; *see In re ProEducation Int'l, Inc.*, 587 F.3d at 299-300. "Yet, '[d]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration.'" *In re ProEducation Int'l, Inc.*, 587 F.3d at 300 (quoting *FDIC v. U.S. Fire Ins.*, 50 F.3d 1304, 1313 (5th Cir. 1995)). This considered, disqualification "must not be imposed cavalierly." *Id.*

"When considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'" *In re ProEducation Int'l, Inc.*, 587 F.3d at 299. Western District of Texas Local Rule AT-7(a) states "[m]embers of the bar of this court and any attorney permitted to practice before this court must comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct." W.D. Tex. Local Rule AT-7(a). The Fifth Circuit has made clear, however, that "the Texas Rules 'are not the sole authority governing a motion to disqualify.'" *In re ProEducation Int'l, Inc.,* 587 F.3d at 299 (*quoting In re Am. Airlines,* 972 F.2d at 610).

## DISCUSSION

To prevail based on Mr. Cedillo's alleged prior representation, Plaintiff must demonstrate that there was an actual attorney-client relationship between Plaintiff and Mr. Cedillo, and there is either (a) a substantial relationship between the subject matter of the 1990s lawsuits and present representation or (b) Mr. Cedillo's representation would in reasonable probability result in a violation of Texas Disciplinary Rule of Professional Conduct 1.05. *See In re Am. Airlines, Inc.*, 972 F.2d 605, 614–15 (5th Cir. 1992). Alternatively, Plaintiff must demonstrate Mr. Cedillo is a necessary witness in this case. *See* TEX. DISCIPLINARY RULES PRO. CONDUCT R. 3.08(a); *In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004); *McClure Ent. v. Burnett*, 735 S.W.2d 309, 311 (Tex. App.—Dallas 1987, no writ). However, as discussed below, Plaintiff's motion falls short.

**I.     Disqualification Based on Prior Representation**

    a.  <u>Actual Attorney-Client Relationship</u>

As the threshold issue for disqualification based on a prior representation, the Court first addresses whether there existed an actual attorney-client relationship between Mr. Cedillo and New LULAC Council. Here, because Plaintiff has offered no evidence that an express attorney-

client agreement between Mr. Cedillo and the New LULAC Council exists, *see* ECF No. 16 at 25–26; ECF No. 20 at 13–15, the Court evaluates whether there was an implied attorney-client relationship between Mr. Cedillo and the New LULAC Council.

"[A]n attorney-client relationship can be implied from the conduct of the parties." *Hendricks v. Barker*, 523 S.W.3d 152, 158 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The Fifth Circuit has noted that the existence of an attorney-client relationship "depends on a contract, express or implied, between the parties." *Simpson v. James*, 903 F.2d 372, 376 (5th Cir. 1990). To establish this relationship, the parties must explicitly or by their conduct manifest an intention to create it. *See id*. In other words, "an attorney-client relationship may . . . be formed by implied contract; that is, an agreement may be implied from actions that reveal the parties' intent to establish the relationship." *Century Res. Land L.L.C. v. Adobe Energy, Inc*, 82 F. App'x 106, 114 (5th Cir. 2003). "To determine if there was an agreement or meeting of the minds one must use objective standards of what the parties said and did and not look to their subjective states of mind." *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.). Therefore, the relevant inquiry for an implied attorney-client relationship is whether the parties' statements and actions objectively demonstrate a manifestation of intent to enter into that relationship. *Id.* The formation of an attorney-client relationship is generally a question of fact. *See Acme Truck Line, Inc. v. Gardner*, No. H-13-3152, 2014 WL 6982277, at *2 (S.D. Tex. Dec. 9, 2014) (citing *In re Tex. Windstorm Ins. Ass'n,* 417 S.W.3d 119, 146 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding).

In the present case, whether an attorney-client relationship existed between Mr. Cedillo and New LULAC Council hinges upon the LULAC Entities' history of oscillating between an unincorporated nonprofit association and a formally incorporated entity. "An unincorporated

association is a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective." *Cox v. Thee Evergreen Church*, 836 S.W.2d 167, 169 (Tex. 1992); *see also* TEX. BUS. ORGS. CODE § 252.001. According to Plaintiff, the LULAC Entities have continuously put on Feria De Las Flores and crowned a "Reina de las Feria de las Flores" and "Rey Feo" since 1946. ECF No. 16 at 15; *see* ECF No. 16-18. Given this common objective, it follows that between 1929 and July 28, 1993, Original LULAC Council No. 2 fell within the definition of an unincorporated nonprofit association. On July 28, 1993, Original LULAC No. 2 was then formally incorporated as "Original LULAC Council No.2, Inc." ECF No. ECF No. 20-12. However, Original LULAC Council No. 2, Inc., forfeited its existence two years later, on August 8, 1995. *Id.* Significantly, the Original LULAC Council No. 2, Inc. was never reinstated. *Id.*

Plaintiff impliedly argues that upon forfeiture of its existence in 1995, Original LULAC No. 2, Inc. reverted to an unincorporated voluntary association, which then became the New LULAC Council before the Court today. ECF No. 16 at 4–5, 25–26; ECF No. 21 at 7–8. As such, Plaintiff insists, Original LULAC Council No. 2 was never defunct and has instead existed as the one continuous entity since 1929. ECF No. 16 at 4–5, 25–26; ECF No. 21 at 7–8. To that end, the New LULAC Council points to exhibits purportedly demonstrating its continuous existence. ECF No. 16-30; ECF No. 1-1. However, Plaintiff fails to explain the impact of the New LULAC Council's formation as a new corporate entity in 2012 to the matter at hand, or to squarely address the impact of the 1995 forfeiture of the Defunct LULAC Council. Rather, Plaintiff argues—without any legal authority—that the various entities discussed can properly be viewed as one continuous entity from 1929 to present.

While the Northern District of Texas has held that forfeiture of a corporate charter does not necessarily result in the dissolution of a business, this does not save Plaintiff's argument. *Broadstar Wind Sys. Group LLC v. Stephens*, No. 3:10-CV-0369-F, 2010 U.S. Dist. LEXIS 160951, at *26 (N.D. Tex. 2010) (citing *Tiddies, Inc. v. Brown*, No. 3:02-CV-2249-BF, 2005 U.S. Dist. LEXIS 3456, at *6 (N.D. Tex. Mar. 4, 2005)). The Texas Business Organizations Code permits a dissolved corporation to continue its existence for a period of three years after termination to: (1) defend against actions brought against the entity; (2) permit the survival of "existing claims" against the entity; (3) hold title to or liquidate property owned by the entity at the time of termination; (4) apply or distribute property to discharge liabilities; and (5) settle other affairs not completed before termination. TEX. BUS. ORG. CODE § 11.356(a).[8] "Neither the forfeiture of corporate privileges by the comptroller nor the forfeiture of a corporation's charter by the secretary of state extinguishes the corporation as an entity." *Tiddies, Inc. v. Brown*, 2005 U.S. Dist. LEXIS 3456, at *6 (citing *Hinkle v. Adams*, 74 S.W.3d 189, 193-94 (Tex. App. Texarkana 2002, no pet.)). When a corporation files its delinquent reports and pays its delinquent taxes, its corporate privileges and charter are retroactively reinstated. *Mello v. A.MF. Inc.*, 7 S.W.3d 329, 331 (Tex. App. — Beaumont 1999, pet. denied). But here, the Defunct LULAC Council was never reinstated in this manner.[9] Instead, Tom Sandoval opted to create "Original LULAC Council No. 2" as a new, separate entity. *See* ECF Nos. 20-9, 20-10, 20-11, 20-12, 20-13. Accordingly, considering the evidence presented, the Court concludes that the Defunct LULAC Council and the New LULAC Council are distinct legal entities.

---

[8] But subsection (b) of the Code specifically notes that "[a] terminated filing entity may not continue its existence for the purpose of continuing the business or affairs for which the terminated filing entity was formed unless the terminated filing entity is reinstated under this code or the Tax Code." TEX. BUS. ORGS. CODE § 11.356(b).

[9] The Texas Business Organizations Code details the proper procedure to follow for reinstatement. *See* TEX. BUS. ORGS. CODE §§ 11.253, 11.254, 11.255, 22.365. But there is no evidence this procedure was followed here. *See* ECF Nos. 20-9, 20-10, 20-11, 20-12, 20-13.

Thus, the facts presented here do not evidence the existence of an attorney-client relationship between Mr. Cedillo and New LULAC Council—the current Plaintiff—because the Defunct LULAC Council and the New LULAC Council are distinct legal entities.

      b. <u>Substantial Relationship</u>

Nonetheless, even assuming there existed an attorney-client relationship between Mr. Cedillo and the New LULAC Council in the 1990s, Plaintiff's motion would still fail. A conflict of interest with a former client arises if a lawyer's current representation bears a "substantial relationship between the subject matter of the former and present representations." *In re Am. Airlines*, 972 F.2d at 614–15. To that aim, "the subject matter need [not] be relevant in the evidentiary sense to be substantially related[;] [instead,] [i]t need only be akin to the present action in a way reasonable persons would understand as important to the issues involved." *John Crane Prod. Sols.*, No. 3:11–CV–3237–D, 2012 WL 3453696 at *2 (internal quotation marks omitted) (first alteration added) (citing *In re Corrugated Container Antitrust Litig.,* 659 F.2d 1341, 1346 (5th Cir. Unit A Oct. 1981), *abrogated in part on other grounds by Gibbs,* 742 F.2d 181). To satisfy the substantial relationship test, Plaintiff would have to submit evidence that ownership of the Asserted Marks was at issue in the relevant 1990s lawsuits *in which Mr. Cedillo was involved*. Plaintiff is unable to make such a showing.

Plaintiff asks this Court to find that each of the 1990s lawsuits were tangentially related to the overarching matter of control of the LULAC Entities and RFSF, and that Mr. Cedillo's current representation bears a substantial relationship to the proceedings of the 1990s in which he was involved. ECF No. ECF No. 16 at 28–33. The Court declines to do so.

To begin, because Mr. Cedillo did not represent any party in the 1992 Lawsuit, the 1993 Lawsuit, or the 1998 Lawsuit, the Court will not address whether these actions were substantially

related to the case at bar. Instead, this Court will focus its substantial relationship analysis on the Consolidated 1990-1991 Lawsuit and 1993 *Velez v. De Lara* Appeal.

As mentioned above, the Consolidated 1990-1991 Lawsuit concerned a "coup" attempt by David Villareal, who led a "rogue" faction against Tom Sandoval, trying to seize control of the unincorporated Original LULAC Council No. 2. That case turned on three key issues: (1) who were the legitimate trustees of the East Park Place Apartments; (2) who represented the Defunct LULAC Council No. 2; and (3) who were the legitimate trustees of the LULAC Scholarship Committee, Inc. ECF No. 16-1; ECF No. 16-5. Plaintiff's evidence fails to indicate the Asserted Marks were a central point of contention in that case. To the contrary, that lawsuit primarily revolved around the control of unincorporated LULAC Council No. 2, not the Asserted Marks. *See generally* ECF No. 16-5. In addition, Plaintiff attempts to analogize the instant case by characterizing Defendant Gabriel as "yet another usurper of Lulac Council 2." ECF No. 16 at 31–32. But this characterization of Defendant Gabriel simply muddies the waters as the instant action turns fundamentally upon rights to the Asserted Marks. This considered, the case at bar is not substantially related to the Consolidated 1990-1991 Lawsuit.

Likewise, the 1993 *Velez v. De Lara* Appeal is not substantially related to the case at hand. The 1993 *Velez v. De Lara* Appeal stems from an order entered by a Bexar County District Judge setting aside a previous sanctions order entered by a different district court judge. ECF No. 16-21 at 2. Jose Velez and Manuel Munoz, Jr. contended that the second trial judge was without authority to vacate the sanctions order because such orders can be reviewed on appeal only after entry of a final judgment on the merits. *Id.* The underlying suit was commenced as an interpleader action initiated by International Bank of Commerce (IBC) related to a bank account maintained by LULAC. *Id.* IBC bank was ultimately dismissed from the underlying suit per an agreement

between the parties. *Id.* Ultimately, the appellate court held that the trial court had authority to set aside the order of sanctions and that it did not abuse its authority in ruling on appellants' motions for additional sanctions. *Id.* at 3.

Plaintiff does not argue that the 1993 *Velez v. De Lara* Appeal is substantially related to the instant action, stating only that "Mr. Cedillo also represented the authentic Local Lulac Council 2 in the appeal styled *Velez v. De Lara*, 905 S.W.2d 43 (Tex. App. – San Antonio), Case No. 04-93-00369-CV." ECF No. 16 at 17. Mr. Cedillo maintains that he appeared only on behalf of Appellees Botello and De Lara in their individual capacities and did not represent the Defunct LULAC Council in that proceeding. ECF No. 20 at 10. Indeed, this assertion is supported by the record. ECF No. 16-21 at 2. But even if Mr. Cedillo did represent the Defunct LULAC Council in the 1993 *Velez v. De Lara* Appeal, that case does not bear on the subject matter currently at issue. Simply put, Mr. Cedillo did not represent New LULAC Council in any preceding litigation, but even if he did, the case at bar is not substantially related to either the Consolidated 1990-1991 Lawsuit or the 1993 *Velez v. De Lara* Appeal.

    c. <u>Confidential Information</u>

Though not squarely addressed in the parties' briefing, Texas Disciplinary Rule of Professional Conduct 1.09(a)(2) requires disqualification if the present representation in reasonable probability will involve a violation of Texas Disciplinary Rule of Professional Conduct 1.05. Rule 1.05(b)(3) prohibits the use of "confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known." TEX. DISCIPLINARY R. PRO. CONDUCT 1.05(b)(3). Thus, assuming Mr. Cedillo did represent Plaintiff in the past, Plaintiff must show there is a reasonable probability that he will violate Texas

Disciplinary Rule of Professional Conduct 1.05 by using confidential information gained from his prior representation to the detriment of Plaintiff in this action.

To disqualify Mr. Cedillo on this basis, Plaintiff's motion and supporting evidence must adequately identify those disclosures made to their alleged former attorney to allow the Court to determine whether disqualification is warranted based on prior disclosures of confidential information. *Islander East Rental Program v. Ferguson*, 917 F. Supp. 504, 511 (S.D. Tex. 1996). Therefore, at a minimum, Plaintiff must make a showing that confidences were, in fact, exchanged with Mr. Cedillo. Yet, the only related assertion Plaintiff makes is that this Court "must 'irrebuttably presume that relevant confidential information was disclosed during the former period of representation,' and the lawyer must be disqualified." ECF No. 16 at 29 (citing *Am. Airlines*, 972 F.2d at 614).

But the presumption that confidential information has been given to the attorney only arises where a substantial relationship between the attorney's current and former representation is established. *Islander East*, 917 F. Supp. at 510–511 (citing *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1346 (5th Cir. Unit A October 1981). The Court already concluded Plaintiff failed to meet the substantial relationship test. Accordingly, there is no presumption that Plaintiff exchanged confidential information with Mr. Cedillo regarding the marks at issue in this case. Further, Plaintiff's conclusory statement that confidential information was disclosed to Mr. Cedillo does not specifically identify any disclosed information. Such identification is needed for Plaintiff to prevail on disqualification on this basis here. *See Am. Airlines*, 972 F.2d at 615. Plainly put, Plaintiff has not produced evidence "showing that [Mr. Cedillo] possesse[s] *relevant* confidential information" that could or would be used against it in this lawsuit. *Amer. Airlines*, 972 F.2d at 615 (emphasis added).

15

Accordingly, Plaintiff did not meet its burden of demonstrating that Mr. Cedillo possesses confidential information concerning New LULAC Council that would "*in reasonable probability*" be used against New LULAC Council in this litigation. *See* TEX. DISCIPLINARY R. PRO. CONDUCT RULE 1.09(a)(2) (emphasis added).

## II.  Disqualification Based on Mr. Cedillo Being a Necessary Witness

Plaintiff further argues that Mr. Cedillo's representation of Defendants RFSF and Gabriel "is in direct violation of Texas Rule 3.08 and Model Rule 3.7" because Mr. Cedillo is purportedly "a witness necessary to establish an essential fact" on behalf of Plaintiff and "may be compelled to furnish testimony adverse to RFSF." ECF No. 16 at 33. In any event, for disqualification on this basis, "[t]here must be a genuine need for the attorney's testimony, which should be material to the movant's case as well as prejudicial to the interests of the attorney's client before disqualification is required." *Burnett*, 735 S.W.2d at 311. That is, for disqualification under either Texas Disciplinary Rule of Professional Conduct 3.08(a) or Texas Disciplinary Rule of Professional Conduct 3.08(b), this Court must determine whether Mr. Cedillo's testimony is necessary such that there is information to which he will be the only one available to testify. *See In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004); *In re Sandoval*, 308 S.W. 31, 34 (Tex. App.-San Antonio 2009, no pet.); *United States v. Starnes*, 157 Fed. App'x. 687, 69394 (5th Cir. 2005); *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 267 (5th Cir. 2001) (holding an attorney's testimony was not necessary under ABA Model Rule 3.7 when each piece of information was available from another source).

Plaintiff argues that Mr. Cedillo's testimony regarding his prior advocacy is essential in the instant litigation, claiming "his prior representation conclusively [established] Local Lulac Council 2 was the legitimate trustee for the Scholarship Committee and that the mark was not

transferred to the Scholarship Committee." ECF No. 16 at 33. Further, New LULAC Council states "Defendant [sic] is entitled to the testimony of its former attorney, not those who represented the adverse party." *Id.* at 32.[10] In response, Defendants point out that "Plaintiff does not allege in its Motion that Mr. Cedillo is the only source of this information or only witness who can provide such testimony," and note that Plaintiff's own exhibits undercut its contention that Mr. Cedillo is a necessary fact witness. ECF No. 20 at 20.

Indeed, as Defendants correctly contend, Plaintiff's own submissions demonstrate that any testimony required from Mr. Cedillo can be obtained from other individuals. For example, a declaration submitted by Plaintiff, Karen Marvel states, "[t]he above-referenced cases [the 1990–1991 Consolidated Lawsuit and the 1992 Lawsuit] were related cases which were both tried by Judge John Specia. These suits were disputes over which Lulac Council No. 2 was the authentic entity exercising ownership and control of Lulac Scholarship Committee, Inc., the REY FEO mark, and the scholarship program and donations." ECF No. 16-37. It follows that Ms. Marvel is able to clarify the issues central to the Consolidated 1990-1991 Lawsuit and the 1992 lawsuit. *Id.* [11]

In sum, Mr. Cedillo's necessity as a witness here is dubious at best.[12] Accordingly, the Court **DENIES** Plaintiff's Motion to Disqualify Mr. Cedillo based on both his purported prior representation of the New LULAC Council or his necessity as a witness in this matter.

---

[10] Plaintiff cites no authority for the proposition that it is "entitled" to the testimony of its former attorney. In any event, the Court holds, as stated above, that Mr. Cedillo did not represent Plaintiff in any prior litigation.

[11] Notably, when originally filing this motion to disqualify in *Rey Feo Scholarship v. LULAC Council No. 2*, Case No. 5:22-cv-1077, Plaintiff conceded that Mr. Cedillo is not the only available witness but is "*one of the few* left that could elucidate what happened." *Rey Feo Scholarship v. LULAC Council No. 2*, No. 5:22-cv-1077, ECF No. 52 at 19 (emphasis added). In addition, Plaintiff noted that other potential third-party witnesses "are in advanced age, incapacitated, or deceased." *Id.* But Plaintiff provided no additional information regarding the health and condition of those individuals, nor did it describe the information to which they might have testified. The mere fact that one is of advanced age does not destroy one's viability as a witness.

[12] Further, comment 10 to Texas Disciplinary Rule of Professional Conduct 3.08 contemplates motions to disqualify similar to the one before the Court here, warning that "[Rule 3.08] should not be used as a tactical weapon to deprive the opposing party of the right to be represented by the lawyer of his or her choice" and that "a lawyer should not seek to disqualify an opposing lawyer by unnecessarily calling that lawyer as a witness. Such unintended

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to disqualify Defendants' counsel (ECF No. 16) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 14th day of February, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

applications of this Rule, if allowed, would subvert its true purpose by converting it into a mere tactical weapon in litigation."